# Corn Exchange National Bank *versus* National Bank of the Republic.

| 78 | 233 |
|----|-----|
| 159 | 51 |

1. A forged check was deposited on Saturday with the defendant bank and on Monday it was delivered to the plaintiff, the drawee bank, in the exchanges through the Clearing House; the depositor drew against the deposit on Monday after the exchanges were made.   On Tuesday the plaintiff notified the defendant of the forgery, and demanded repayment, which was refused.   *Held*, that there was no negligence in the time of the notice and demand.

2. The right of the plaintiff to recover back the money did not depend on the right or ability of the defendant to recover from the forger.

3. The Act of April 5th 1849, is not merely declaratory of the law as it then stood; it gives a clear right to the plaintiff to recover the money paid by him to a previous holder.

4. The Clearing House rules required that notice as to paper specified should be given within a certain time; forged paper was not amongst that specified.   In an action to recover the amount of forged paper paid by the plaintiff to defendant, the rules of the Clearing House were not evidence for defendant.

5. All the facts in this case not sufficient to go to the jury on the question of negligence.

6. Levy v. Bank U. S., 1 Binn. 27, not law.   Tradesmens' Bank v. Third National Bank, 16 P. F. Smith 435, compared.

April 1st 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia*: Of July Term 1873, No. 145.

This was an amicable action, entered July 20th 1872, by the Corn Exchange National Bank against The National Bank of the Republic.    The action was for the recovery of the amount of a forged check on the plaintiff paid by them to the defendant.    The check purported to have been drawn by W. A. Simpson & Son, and was for $2000.

The cause was tried May 29th 1873, before Mitchell, J.

The evidence was, that the check was brought to the defendant bank on Saturday, June 1st 1872, by T. M. Simpson, a son of Wil-

liam A. Simpson, one of the firm; Simpson said he desired to open an account in that bank; he deposited the check in controversy and it was passed to his credit in an account then opened. The check was passed in the regular way through the exchanges of the Clearing House, and received by the plaintiff on Monday, the 3d of June. On the afternoon of that day T. M. Simpson, by his own check, drew from the defendant $1800. On the 4th, about twelve o'clock, the plaintiff notified the defendant that the check was a forgery, and demanded payment, which was refused. Both plaintiff and defendant are members of the Clearing House. The banks meet at the Clearing House at half-past eight in the morning, and deliver to each other the checks received on the preceding day. The plaintiff gave evidence further, by the paying teller, that the checks from the Clearing House come sealed to the bank, and are opened at the paying teller's desk, examined and passed to the book-keeper. The account of W. A. Simpson & Son was good for the amount of the check; the teller did not then discover that it was a forgery; on the 4th of June, W. A. Simpson informed the plaintiff that their firm had reason to believe that a forgery had been committed on them for $2000 or $2500; the teller then examined the check in question, but was not able to say, from examination, that it was a forgery.

On cross-examination, the witness said: that the checks of W. A. Simpson & Son were drawn from a check-book, such as was furnished by the plaintiff to all depositors; the check in question was not from such book; the customary checks of Simpson & Son were blue, the one in question was red; knew of no instructions not to pay checks unless perforated or stamped; there was nothing to show this different from other checks issued; the signature was like that of the firm.

For the defendant, W. A. Simpson testified: that the check was not like any drawn by their firm; they never drew any check that was not taken from the book furnished them by the bank; they gave the bank instructions not to pay any check unless perforated. The signature was not like that of the firm; perhaps four or five checks might have been given without perforation, but special orders were given, in each case, to pay them.

Under objection and exception, the defendant gave in evidence the rules of the Clearing House; one rule was, that checks received in the morning exchanges, when not found good or were informal, might be returned to the bank before twelve o'clock of the same day; other rules fixed the times at which notice should be given to the members of the Clearing House as to irregularities which were specified in the rules; none of those specified, were as to forged checks, &c.

The plaintiff, in rebuttal, gave evidence by their paying-teller that it was very common to give and pay checks not perforated or

[Corn Exchange Nat. Bank *v.* Nat. Bank of the Republic.]

stamped; he did not recollect any instructions to pay only on one kind of check; they depended little on signatures, chiefly on knowledge of the parties presenting the checks; coming through the Clearing House is a guaranty to every bank; the stamp of Simpson & Son was not peculiar; it was used by thousands of firms.

By the Act of April 5th 1849, sect. 10, Pamph. L. 426, 1 Br. Purd. 159, sect. 5, it is enacted, That wherever any value shall be received as a consideration for or in payment of any bill of exchange, draft, check, promissory note, or other negotiable instrument, by the holder thereof, from the endorsee or payer of the same, and the signature of any person represented to be a party thereto, whether as drawer, acceptor or endorser, shall have been forged thereon, and such value by reason thereof erroneously given or paid, such endorsee or payer respectively shall be entitled to recover back from the person previously holding or negotiating the same, the amount so as aforesaid given or paid by such endorsee or payer to such person, with lawful interest thereon from the time of demand of re-payment.

The court charged :—

"This is an unfortunate case in which, by another person's wrongdoing, one of these two parties, both innocent, must suffer. The rule of law is well settled, that in such a case that person must bear the loss whose negligence or whose want of active diligence has caused the loss. The law gives to an active, attentive and diligent person the advantage which his conduct entitles him to.

" The rule of the law formerly was, that a bank was bound to know the signatures of its depositors. So strict was this rule, that if the bank, through its receiving-teller, took a forged check on deposit and entered it in the depositor's bank-book, the bank was bound by the entry, and could not refuse to pay the amount so credited to the depositor, although the depositor had not lost anything or changed his condition in any way by reason of the entry of the deposit. To change this rule, the legislature passed the Act of 1849, that you have heard read. But this act does not take away the necessity of notice, with due diligence, to the party from whom it was received, nor does it relieve parties from the consequences of negligence.

" There appears to have been no delay in notifying defendant as soon as the forgery was discovered. [And therefore, under the Act of 1849, the plaintiff is entitled to recover, unless there has been negligence on its part, and through that negligence the defendant has been put in a position to lose by paying this money to plaintiff.]"

[" The defendant claims that there has been such negligence, and that is the question you have to consider.]

[Corn Exchange Nat. Bank *v.* Nat. Bank of the Republic.]

" First. As to the difference between this check and those ordinarily used by Wm. A. Simpson & Son.   Their checks are taken from a book, and are blue in color, and are punched or perforated by a stamp before presentation.   Simpson says he gave special orders not to pay checks unless in this usual form.   Plaintiff, on the contrary, says there were no such orders from Simpson, and it is so common for parties to draw checks not from their regular checkbooks, and to omit punching, that it is no negligence not to have discovered this.   This is a question for you to decide.

[" The defendant was bound to wait a reasonable time to see if the check was good; having waited a reasonable time without notice of anything wrong, it was entitled to consider the check all right and to pay out money on its credit.]

[" The rules of the Clearing House do not apply to forged checks, but may be considered by the jury as some indication of what reasonable time would be.]

" If you believe the plaintiff was negligent in taking the check, and defendant waited a reasonable time before paying out the money, then you will find for the smaller amount, admitted by defendant to be due; but if plaintiff was not negligent or defendant did not wait a reasonable time, then you will find a verdict for plaintiff for the whole $2000, with interest."

The verdict was for the plaintiff for $211.87.

The plaintiff took a writ of error and assigned for error.

1. The admission of the rules of the Clearing House in evidence.

2–5. The parts of the charge in brackets.

*S. Dickson* (with whom was *J. .C. Bullitt*), for plaintiff in error, referred to and applied the Act of 1849 : Tradesmen's Bank *v.* Third National Bank, 16 P. F. Smith 435.   Money paid under mistake of fact may be recovered back notwithstanding negligence, delay in giving notice or change of position of the receiver : Kelly *v.* Solari, 9 M. & W. 54 ; Townsend *v.* Crowdy, 8 C. B. N. S. 98.   The facts in this case furnished no evidence of negligence for the jury : Howard Express Co. *v.* Wile, 14 P. F. Smith 201.   It was for the court to say whether the delay in giving notice was unreasonable : Leaming *v.* Wise, 23 P. F. Smith 173.

*C. S. Pancoast*, for defendant in error.—The Act of 1849 was merely to correct the hardship from the particular point decided in Levy *v.* United States Bank, 1 Binn. 37, but gave no higher quality than any other right to recover ; such right would be affected by general and well settled principles of law: Roth *v.* Crissy, 6 Casey 145.   What is reasonable for performance or rescission, where the contract is silent, may be collected from facts proved by parol : Ellis *v.* Thompson, 3 M. & W. 445 ; Cocker *v.* Henk, 3 Sumner 530.

Mr. Justice PAXSON delivered the opinion of the court, May 10th 1875.

An effort has been made to distinguish this case from that of the Tradesmen's Bank v. Third National Bank, 16 P. F. Smith 435, but we think without success. The remark of the late Chief Justice Read in the concluding paragraph of his opinion in that case has no application to the present one. There, it was alleged that the defendants were not liable because they were merely agents for another bank. The court said if the fact were so it made no difference, as the money had not been paid over by the bank to its principal. There is no allegation here that the defendants are the agents of another bank. They became the owners of the forged check; passed it upon the plaintiffs, and received value therefor. Whether the defendants gave cash or a credit for the check when they received it, does not concern the plaintiffs. Their right to recover back the money they paid does not depend upon the right or the ability of the defendants to recover from the person who forged the check, and passed it upon them. The Act of 1849 was not merely declaratory of the law as it then stood. It gives a clear right to the holder of forged paper to recover the money paid by him to a previous holder. Upon this right the act imposes no qualification.

It was contended, however, upon the trial in the court below, that the plaintiffs were not protected by the Act of 1849, because they had been guilty of negligence. It is not necessary for us to express an opinion as to how far negligence is a defence under this act, for the reason that there was not sufficient evidence upon this point to justify the learned judge of the District Court in submitting it to the jury. There must be something more than a scintilla of evidence to entitle it to go to the jury. Howard Express Company v. Wile, 14 P. F. Smith 201. In this case the forged check was received by the plaintiffs through the Clearing House on Monday, the 3d day of June, and the next day the defendants were notified of the forgery. It is said the plaintiffs should have discovered the forgery earlier; in fact should have detected it when the check was first received through their exchanges; that it was of a different color from the checks usually drawn by the firm, and the signature was not a close imitation. If Levy v. U. S. Bank, 1 Binn. 27, were still the law, there would have been more force in the latter suggestion. In that case it was held that the bank was bound to know the signature of its depositors, and having received a forged check on deposit and entered it as cash in the holder's bank book was not entitled to recover it back. A case could hardly arise of the payment of money upon a forged check in which a plausible charge of negligence could not be made. To hold that a failure to detect the forgery when such a check was presented for payment, amounts to such negligence as would pre-

[Corn Exchange Nat. Bank *v.* Nat. Bank of the Republic.]

vent a recovery under the Act of 1849, would be to fritter away the act, and render it practically useless.    The fact that the check was of a different color from those usually drawn by the firm, and was not perforated, if evidence at all of negligence, was so unimportant as not to justify the submission of the question to the jury.

There was also error in admitting the rules of the Clearing House in evidence.    They did not apply to forged checks, and may have misled the jury.

Judgment reversed and a *venire facias de novo* awarded.