## States, Appellant, *v.* First National Bank of Montrose.

*Banks and banking—Fraud—Two innocent parties—Forged draft—Impersonation—Notice.*

As between two innocent parties he who by first acting makes loss possible by inducing the other to act, must bear it.

An executor received letters purporting to be signed by a legatee. As a matter of fact the legatee was dead, and the letters were written and signed by her daughter at the dictation and under the direction of her father. The executor bought a draft for the amount of the legacy to the order of the legatee, and sent it in a letter addressed to her. The husband received it and procured the daughter to forge the name of his deceased wife, and secured the money. The executor did not until nearly four years after he discovered the fraud notify the bank that its draft had been paid on a forged indorsement. *Held,* that no recovery could be had against the bank.

Argued March 17, 1902. Appeal, No. 267, Jan. T., 1901, by plaintiff, from judgment of Superior Court, Jan. T., 1901, No. 32, reversing judgment of C. P. Susquehanna Co., April T., 1899, No. 182, in case of Jacob States v. First National Bank of Montrose. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from judgment of the Superior Court. See 17 Pa. Superior Ct. 256.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was judgment of the Superior Court.

*A. B. Smith,* of *McCollum & Smith,* for appellant.—It was the duty of the defendant bank to deliver the funds represented by the draft to the payee, or in default, made necessary by the latter's death before its issue, hold the money subject to the order of the plaintiff Jacob States; and the payment to Benjamin Vincent without even his own indorsement and upon the forged indorsement of the name of the payee was contrary to and in violation of the authority from Jacob States and a misfeasance on the part of the defendant bank, and as against Jacob States said payment was a nullity: Seventh National Bank v. Cook, 73 Pa. 483; Saylor v. Bushong, 100 Pa. 27; Girard Bank v. Penn Twp. Bank, 39 Pa. 92; Zebley v. Voisin, 7 Pa. 527; Coursin v. Ledlie, 31 Pa. 506 ; Tradesmen's Nat. Bank v. Third Nat. Bank, 66 Pa. 435.

If it should be held that a creditor directing his debtor to send the amount of his indebtedness by check or draft upon any certain bank, became the owner of the check or draft when the same had been deposited in the mail by the specific direction of the creditor, properly directed, and that the creditor in such case took upon himself the risk and hazard of its transmission; it must be remembered that in this case there was no request as to how Jacob States should pay the money to his sister, Rebecca Vincent, nor was there ever even a suggestion as to how it should be paid; therefore, when Jacob States purchased the draft of the First National Bank of Montrose, he became the owner of it, and transmitted it as he believed to the proper address of his sister without the knowledge or request of anyone, he still retained the ownership of the draft until it was actually received by her if living, or by her legal representatives if dead: Talbot v. Bank of Rochester, 1 Hill (N. Y.), 295; Thomson v. Bank of North America, 82 N. Y. 1.

*William D. B. Ainey,* for appellee.—Where through trick or artifice, a check or draft is secured to be drawn to another who

is acting under an assumed name, or claiming to be a person whom he is not, and the check or draft is indorsed in the assumed name, and paid, the loss must rest upon him who first gave credence to the artifice, and thus made the fraud possible: Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230; United States v. Nat. Exch. Bank, 45 Fed. Repr. 163; Robertson v. Coleman, 4 N. E. Repr. (Mass.) 619; Emporia Nat. Bank v. Shotwell, 35 Kan. 360; Crippen v. Bank, 51 Mo. App. 508; Maloney v. Clark, 6 Kan. 83.

The plaintiff was negligent in directing the defendant bank to make this draft payable to the order of Rebecca Vincent: Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 47.

States was further guilty of negligence in failing to notify the defendant bank for four years after he discovered the forgery: Wolf v. Jacobs, 10 Pa. Superior Ct. 59; Rick v. Kelly, 30 Pa. 531; Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46.

The defendant was guilty of no negligent act: First Nat. Bank v. Shoemaker, 117 Pa. 102; Seventh Nat. Bank v. Cook, 73 Pa. 483; Case v. Morris, 31 Pa. 100; Girard Bank v. Bank of Penn Twp., 39 Pa. 92.

OPINION BY MR. JUSTICE BROWN, May 19, 1902:

Jacob States, Sr., the father of plaintiff, died September 21, 1892, and his will was admitted to probate October 7, of the same year. The testator bequeathed $1,000 to his daughter, Rebecca Vincent, to be paid to her by the plaintiff, his executor, within one year after his death. She died June 16, 1892 —three months before her father—and, under the statute, the legacy passed to her seven children. After the death of his father, plaintiff received letters purporting to have been written by his sister, of whose death he had no knowledge, the letters having really been written by Maud H. Vincent, a daughter of his deceased sister, at the dictation and under the direction of her father, Benjamin Vincent. The plaintiff supposed he was dealing with his sister, all letters received by him having been signed "Rebecca Vincent" or "Ben and Rebecca to Jacob." These letters and plaintiff's replies to them resulted in a compromise, by the terms of which he was to pay Rebecca Vincent $900 in full payment of the legacy of $1,000. On March 23,

1893, Benjamin Vincent induced his daughter, Maud H., to execute a release to Jacob States, in the name of Rebecca Vincent, for the bequest, and to go before a notary public in Alabama and acknowledge it as the act and deed of Rebecca Vincent. After States received this release, he went to the First National Bank of Montrose on March 30, 1893, and purchased a draft for $900, payable to the order of Rebecca Vincent, on the Chase National Bank of New York, paying $2.25 exchange on the same. The draft was delivered to him and he mailed it to Rebecca Vincent. It was received by Benjamin Vincent, who procured his daughter, Maud H., to indorse it " Mrs. Rebecca Vincent." It was cashed for him by J. B. Trimble & Company, of Montgomery, Alabama, and subsequently sent to the Chase National Bank of New York, where it was paid on April 24, 1893, charged up to the account of the First National Bank of Montrose and sent to that bank, canceled on May 1, 1893. J. B. Trimble & Company failed in business August 10, 1893, and Benjamin Vincent died October 17, 1895. On June 18, 1893, States learned for the first time that his sister had died on June 16, 1892, more than three months before her father, and, in December of the following year, he sent a representative to the state of Illinois to try to secure releases from his sister's children for the amount which their father had so improperly procured from him. In this he was not successful, but nothing was done by the children of Rebecca Vincent until January, 1897, when, in proceedings in the orphans' court of Susquehanna county, they took steps to compel him to pay the amount of the legacy given to their mother, and succeeded in doing so. It nowhere appears that, prior to January, 1897, he gave any notice to the bank of the fraud that had been practiced upon him, and, through him, upon it.

Through actual fraud and imposition practiced upon the plaintiff, he was led into the perpetration of a fraud upon the bank. No moral culpability, however, attaches to him, for he thought his sister was living when he purchased the draft from the bank for $900, payable to her order; and the cashier who drew it, it must be assumed, believed the payee was living, for banks do not deal with dead persons. It need hardly be argued that, if the bank had known or been told by States that his sister was dead, it would not have issued the draft to her order,

but would have explained to him that, if the money was due her estate, her personal representative would have to be the payee in the draft. It clearly was issued, under a mistake, to one who was dead. The issuance of it made possible the consummation of the fraud conceived by Benjamin Vincent as soon as his father-in-law died, and the question is whether States or the bank shall bear the consequences. Both, it is of course conceded, are innocent victims; but the bank became so because it was induced to act by States. It did nothing of its own motion. In the course of its business, and as part of it, drafts were issued for the convenience of those who purchased them. For his convenience, it issued to States the one which is the subject of this controversy. He was the brother of Rebecca Vincent, and ought to have known whether she was living or dead. It was his duty, under the terms of his father's will, to pay her $1,000, if she was living, and, if dead, to pay the bequest to her children. Whether his ignorance of her death was due to his indifference to her and her family, or theirs to him, while she was living, is not material, though it is surprising, and seems almost unnatural, that this brother did no know more about his sister. It is sufficient to know that, after she was dead, he requested the bank to issue its draft, payable to her order, as if she were living, and that, having allowed himself to be deceived, he continued, though not intending to do so, the deception upon the bank. But for this deception upon it, the bank can justly be heard to complain, that its draft would not have been issued and the plaintiff would not now be suing it. If there were no other reason why he should not recover, he is confronted with the rule that, as between two innocent parties, he who, by first acting, makes loss possible by inducing the other to act, must bear it. "It is always a good defense that the loss complained of was the result of the complainant's own fault or neglect:" Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46. The Superior Court, in reversing the court below, seems to have done so on the authority of Land Title & Trust Company v. Northwestern Nat. Bank, 196 Pa. 230 ; but the facts in the two cases are clearly distinguishable. Maloney v. Clark, 6 Kan. 82, is very similar in its facts to the present case, but, as we are of one mind, that the plaintiff cannot recover, in view of his conduct

after he learned that his sister was dead, and he must have known that, if the draft bore the indorsement of Rebecca Vincent, as the payee, it was forged, we need not rediscuss the general principles in Trust Company v. Bank, nor review Maloney v. Clark & Company, as a controlling authority in the case.

The duty of the plaintiff, when he discovered the fraud practiced upon him, was to promptly notify the bank, upon which he had innocently imposed, that it might take steps to protect itself against the consequences of what is now alleged to have been a payment upon a forged indorsement. That this was his clear duty rests upon reason and authority: Rick v. Kelly, 30 Pa. 531; Bank v. Bank, supra. If he had given such notice, the defendant could have notified its correspondent, the Chase National Bank, which paid the draft, that it would be held, and it, in turn, could have had recourse to J. B. Trimble & Company and Benjamin Vincent. But, if the bank should now be required to pay, and afterwards attempt to hold its correspondent, answer will be made that notice had not been given it, such as the law requires. On June 18, 1893, States knew that a fraud had been practiced upon him in March preceding, and though, to relieve himself from the consequences of it, he tried, in the following year, to secure releases from his sister's children, he gave no notice to the bank of Vincent's deception. If he had done so then, Trimble & Company being still in business and Benjamin Vincent living, recourse might have been had to them. Subsequently Trimble & Company failed, and his brother-in-law died, and not until January, 1897 (so far as we can learn from the record), was any notice given to the bank that its draft had been paid on a forged indorsement. To recover from it, he was bound to give it notice as soon as he discovered the fraud practiced upon him, and the burden was upon him, on the trial below, to show that he had given such notice. Not having done so, he cannot recover; and the judgment of the Superior Court, reversing the court below, is affirmed.