Market St. Title & Trust Co. *v.* Chelten Trust Co., Appellant.

Argued December 6, 1928.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellant.—Plaintiff cannot recover if the loss was occasioned by its negligence: Iron City Bank v. Bank, 159 Pa. 46; Union Nat. Bank v. Bank, 271 Pa. 107.

Plaintiff cannot recover if under similar circumstances an ordinary depositor could not recover: Land Title & Trust Co. v. Bank, 196 Pa. 230; Knights of Joseph v. T. & S. D. Co., 69 Pa. Superior Ct. 89; Penna. M. L. Ins. Co. v. Bank, 70 Pa. Superior Ct. 34, 38.

An ordinary depositor could not recover from plaintiff: Myers v. Bank, 193 Pa. 1; McNeely v. Bank, 221 Pa. 588; United Security L. Ins. & Trust Co. v. Bank, 185 Pa. 586.

The judgment of the lower court is based on a disputed question of fact which should have been submitted to the jury.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *John V. Lovitt,* for appellee.—The present case is not a "fictitious payee" case: Nat. F. Ins. Co. v. Bank, 276 Pa. 212.

The cases cited by appellant in support of its contention involve the alteration or forgery of either the drawer's signature or the amount of the check, whereas here the alteration and forgery were of the payee's name only.

The drawer or drawee is under no duty to examine returned checks for forged endorsements or alterations in the name of the payee: Nat. Fire Ins. Co. v. Bank, 276 Pa. 212; United States v. Bank, 135 N. Y. App. Div. 52; United States v. Bank, 214 U. S. 302.

Appellant's negligence caused the loss: Phila. Nat. Bank v. Bank, 25 Fed. (2d) 995.

Appellee can recover on the warranty of appellant's endorsement: Judge v. T. & T. Co., 68 Pa. Superior Ct. 310.

Appellant is liable to appellee for money paid on a forged endorsement.

There was no question of fact to go to the jury.

OPINION BY MR. JUSTICE SIMPSON, March 18, 1929:

In the course of a real estate settlement, where plaintiff was insuring the title to the property and distributing the purchase price, it should have paid Albert W. Sanson, Esq., 1218 Chestnut Street, the sum of $4,591. Through some unexplained mistake of its officials, plaintiff's check for that sum, drawn by and upon itself, was made to the order of S. W. Samson, who, so far as appears, was a nonexistent person. Through another unexplained mistake of its officials, the check was mailed to Albert W. Sampson, 5842 Crittenden Street, Philadelphia, who had no interest in the settlement or right to the money; the letter, with which the check was enclosed, being also directed to him and stating, "We are enclosing herewith check to your order in the amount of $4,591," etc., etc. Before the check left plaintiff's bank, or shortly thereafter and before it was taken to defendant, the mistaken name of S. W. Samson was changed to the equally mistaken one of A. W. Sampson* (to whom, as already stated, the check was mailed), by writing the latter name over the former. No attempt was made to conceal the change; it was observable even on the most casual glance. It is difficult to believe plaintiff's contention that it was made after mailing, since, while fastened to the letter addressed to Albert W. Sampson, it passed under the scrutiny of five of plaintiff's officials or employees, one of whom signed it,

---

* In forging the name from Samson, the letter "p" was written over the third downward stroke of the letter "m," thereby causing the forged name, on a casual inspection, to appear as if it were Sanpson rather than Sampson.

another OK'd it, one or two others verified it and a fifth signed the letter to Sampson which said "We are enclosing herewith check to your order"; but, in the view we take of the matter, it is of no consequence when the change was made. Such alterations in the name of the payee are quite common in checks brought for deposit, the custom of banks, when they occur, being to refuse to receive the check in question except for collection, and to pay nothing on account of it until it has been honored by the drawee bank.

Albert W. Sampson, to whom, as stated, plaintiff sent the check, took it to defendant and sought to open an account with it. Because of the alteration in the name of the payee, defendant, following the custom of banks above referred to, refused to take the check except for collection, and this being assented to by Sampson, he endorsed it in the presence of defendant's officials, they stamped upon it their endorsement, which contained also the words "prior endorsements guaranteed," and, in due course, the check, palpably altered as stated, was presented to and paid by plaintiff. A few days later, Sampson called on defendant to see if the check had been honored, defendant called plaintiff up on the telephone, and one of the officials of the latter, after inquiry regarding or examination of the altered check, replied that it had been paid. Defendant then allowed Sampson to open a checking account with it, and the whole amount was paid to him, or on his order, before defendant received any notice that the check should not have been paid by plaintiff. Fifty-two days after plaintiff had paid the check, A. W. Sanson, Esq., to whom it should have been drawn, inquired of plaintiff why he had not received his money. This led to an investigation, the errors above set forth were discovered, and five days later plaintiff notified defendant thereof and demanded a refund of the amount of the check. This being refused, plaintiff sued defendant on its endorsement; the trial judge refused defendant's point for binding instructions, but gave such instructions for plaintiff; a

verdict was rendered accordingly; the court in banc refused to enter judgment non obstante veredicto for defendant, but instead, entered judgment on the verdict, and defendant prosecuted this appeal. The judgment is erroneous for several reasons.

In the first place, it should have been entered for defendant, because of Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230, from which it cannot be distinguished in principle. There the check was drawn to the order of the proper person, but handed by plaintiff's employee to a third party, supposed to be the proper person, and was endorsed by that third party and deposited in the defendant bank, which also endorsed it and collected its amount from plaintiff. After the fund had been paid out by defendant, the mistake was discovered, plaintiff sued defendant on its endorsement, the trial court, as here, gave binding instructions in plaintiff's favor, but we reversed and entered judgment for defendant, because the money was in fact paid to the person to whom plaintiff, by its actions, showed it intended the money should be paid, though there, as here also, plaintiff thought it would be used by an entirely different person. There is, of course, no difference in principle between delivering a check to the wrong person by *handing* it to him, supposing him to be the right one, and delivering a check to the wrong person by *mailing* it to him, supposing him to be the right one. In that case, as in this, plaintiff caused a specified person to receive the check, expecting he would use it, defendant endorsed the check and collected it from plaintiff, and thereafter paid its amount to the person to whom plaintiff had delivered it. There an instructed verdict for the drawer was reversed, and here a like instructed verdict must receive the same treatment.

The only difference between the two cases is that here defendant's endorsement was accompanied by the words "prior endorsements guaranteed," while there it was not; but this is wholly immaterial, not only because it has always been the law that every unqualified endorse-

ment is a guaranty of the validity of all previous endorsements, but also because the guaranty here, in the very nature of things, was that the prior endorsement, "A. W. Sampson," was the signature of the A. W. Sampson, to whom plaintiff sent the check, and not the signature of A. W. Sanson, Esq., to whom it was neither drawn nor sent, and of whom defendant had no knowledge. Neither defendant, nor any one else to whom the check was given, could know, nor were they required to know, that, in the minds of those acting for plaintiff, there was an undisclosed intention to have the money received by some one other than the person named on the face of the check. The liability is not to be determined by a consideration of plaintiff's undisclosed intent, but by determining whether or not it was negligent in delivering the check to the one who obtained the money on it (Houser v. Nat. Bank of Chambersburg, 27 Pa. Superior Ct. 613, per RICE, P. J.) ; that it was, is an admitted fact in the instant case. This is, indeed, the law respecting any written instrument, but it is especially so in regard to commercial paper, for, from the earliest days to the present, it has always been held to be a "courier without luggage."

It is of no moment that defendant did not see the letter with which the check was enclosed, for neither did defendant, in the Land Title & Trust Co. Case, know of the circumstances under which the check was given. Nor is it a matter of any consequence, in the consideration of the present point, even if the fact be so, that the name of the payee was altered after the check left plaintiff's bank, for the point of the decision in the Land Title & Trust Co. Case—and it is equally applicable here —is that the money was paid to the one to whom plaintiff delivered the check, in order that it might be paid to him. So, also, the objection last stated fails for the further reason—*and this is an additional and independent basis for entering judgment for defendant*—that "it is not reasonable to charge the bank with the consequences of the payment of a forged endorsement when

the plaintiff put in circulation checks which were not susceptible of a genuine endorsement [there being no S. W. Samson]. The case is one for the application of the rule that as between two innocent parties he who by acting makes the loss possible, must bear it": Marcus v. Peoples Nat. Bank, 57 Pa. Superior Ct. 345, 350, by HENDERSON, J., quoted with approval in National Union Fire Ins. Co. v. Mellon Nat. Bank, 276 Pa. 212, 218. Upon this latter ground, the same rule is laid down in States v. First Nat. Bank of Montrose, 203 Pa. 69, 73.

Though unnecessary, perhaps it is advisable to say that the supposed inapplicability of the Land Title & Trust Co. Case to the present situation, growing out of the statement in the opinion there (page 238) that the wrongdoer "would have received money instead of a check if he had asked for it, or he could have drawn the money in the banking department in an adjoining room," which could not have been done here, and the later award of a new venire, as set forth in a footnote to that case (the reason for such award, as shown by the petition for it, appearing in our records to January Term, 1899, No. 285, being the statement just quoted, which it was alleged was not true in fact), is clearly shown to be imaginary by our opinion when the case reached us after the second trial: Land Title & Trust Co. v. Northwestern Nat. Bank, 211 Pa. 211. In that opinion we said (page 214) : "The only fact not developed on the first trial, which was proved on the second, was that the check was taken to the banking department of the institution by the person to whom it had been delivered, and payment demanded. The paying teller refused to pay it unless the person presenting it was identified, whereupon the latter said he would deposit it in his own bank. This was the person to whom the settlement clerk of [defendant] had handed the check, intending to designate him as the payee, [but] the appellee, which had no knowledge" of this is not affected by it. There, we affirmed the judgment on an instructed verdict for defendant, despite that new evidence, and it may be of interest to observe

that we also said (page 213): "In the note to the report of the [first] case in 50 L. R. A. 75, there will be found numerous cases sustaining and vindicating it."

There is, however, a still more important reason for entering judgment for defendant in the present case, growing out of plaintiff's long delay, after the check was paid by it, in discovering that it was paid to or on account of A. W. Sampson, and not A. W. Sanson, Esq., who was its real creditor; and also in the delay in notifying defendant, after the fact of the erroneous payment was actually known by plaintiff. The leading case on these points is Price v. Neal, 3 Burr. 354, by LORD MANSFIELD. It holds that if the drawee actually paid on a forged instrument, he was, by that fact alone, debarred from recovering back from an innocent payee. There are a multitude of cases sustaining this conclusion, and but a few varying from it: see note 12 A. L. R. 1089. The Negotiable Instruments Law (May 16, 1901, P. L. 194), does not disturb that rule: Ibid. 1114 and cases cited.

In this State the rule of Price v. Neal was adopted and applied with great strictness, the paying bank not being allowed to recover back the amount of a forged check, credited in a customer's deposit book, even though the bank discovers the mistake on the same day, and the depositor agrees to refund the money: Levy v. Bank of the United States, 1 Binney 27. To relieve against this severity, the rule was modified by section 10 of the Act of April 5, 1849, P. L. 424, 426. It provides that where the signature of any "drawer, acceptor or endorser, shall have been forged thereon," recovery back can be had by the payer: see Tradesmen's Nat. Bank v. Third Nat. Bank, 66 Pa. 435; Corn Exchange Nat. Bank v. Nat. Bank of the Republic, 78 Pa. 233. This statute has not been repealed by the Negotiable Instruments Law, as amended by the Act of April 27, 1909, P. L. 260: Union Nat. Bank v. Fraklin Nat. Bank, 249 Pa. 375. The Act of 1849, however, does not relieve the paying bank of all

the duties required of it by the law merchant. In Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46, 50, 52, we said, in construing the statute: "The mere fact of payment is no longer, eo instanti and of itself, a bar to recovery of the money, but the principles of the commercial law are still applicable, and there is still the same necessity as before for care, diligence and proper notice under the settled rules of the law of negotiable paper...... The drawee is still presumed to know the drawer's signature......though 'the first slip is no longer conclusive against him. But having finished his examination, dismissed the subject from further attention, and allowed five days to elapse, during which the party receiving the money has paid it out in reliance upon the plaintiff's act, the latter cannot be allowed to say that he acted with due diligence." This is quoted with approval in Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375, 383; U. S. Nat. Bank v. Union Nat. Bank, 268 Pa. 147, 154, and Union Nat. Bank v. Farmers & Mechanics Nat. Bank, 271 Pa. 107.

Under the statute, therefore, though the time of discovery and notice cease to be a matter of importance if the payee has in his hands, at the time demand is made upon him by the drawee, funds belonging to the wrongdoer (Union Nat. Bank v. Franklin Nat. Bank, supra; U. S. Nat. Bank v. Union Nat. Bank, supra); yet the law presumes injury to the payee by delay, and will not enter into a calculation as to whether injury did or did not occur: Leather Manufacturers' Bank v. Morgan, 117 U. S. 96; McNeeley Co. v. Bank of North America, 221 Pa. 588, 594; Marks v. Anchor Savings Bank, 252 Pa. 304; Union Nat. Bank v. Farmers & Mechanics Nat. Bank, supra. This matter is well stated in the McNeely Case (221 Pa. 594) as follows: "This right is to proceed immediately, and to the promptness with which a bank is able to exercise it, recovery is often due. When a depositor withholds from his bank his knowledge of the forgery, he withholds from it this right to proceed

promptly for its own protection. It may or may not be able to recover from the forger by promptly proceeding against him, but its right is to try by so proceeding; and when one of its depositors discovers that it has innocently sustained a loss, he ought, not only in all good conscience, but as a legal duty, to notify it at once of its mistake, for, by withholding from it what he has discovered, he can, as just stated, gain nothing, but it may lose all. A forger may be insolvent or beyond the reach of civil or criminal process, but, by prompt proceedings against him, others may become interested in him and come to his assistance, who after delay may not do so. This incident to a bank's right to promptly proceed against a forger is not to be overlooked. Whenever a depositor knowingly withholds from it knowledge without which it cannot so proceed in an effort to protect itself, he ought to be regarded, when he comes to enforce alleged rights against it, as having withheld from it a substantial right, without regard to what might or might not have resulted from a prompt exercise of that right."

In this class of cases, the burden is always on the drawee to prove clearly that he "gave notice as soon as he discovered the fraud" (States v. First Nat. Bank, 203 Pa. 69, 74) and that the payee then had funds from which he could recoup himself (Union Nat. Bank v. Farmers & Mechanics Nat. Bank, supra), otherwise the right to recover back is lost, and whether or not he performed his full duty is usually a question of law for the court: Marks v. Anchor Savings Bank, 252 Pa. 304. In the instant case, no excuse for the delay was even attempted. Here, also, as plaintiff was both drawer and drawee, it is liable for its failure to discover and to give notice of the forgery by the alteration of the payee's name, exactly as it would have been by the forgery of a depositor's signature. It was bound to know both, the first because the check was its own, drawn by it; the

latter because of the implied contract between it and its depositor.

In United States v. Nat. Exchange Bank of Baltimore, 270 U. S. 527, 534, where a check was altered, after issuance, from $47.50 to $4,750, it is said: "If the drawer and the drawee are the same, the drawer cannot recover for an overpayment to an innocent payee because he is bound to know his own checks: Bank of United States v. Bank of Georgia, 10 Wheaton 333." In the latter case, where the defendant bank was both maker and payee of certain notes, and the forgery consisted in altering the amount of the notes, the Supreme Court, speaking by Justice STORY, said (page 353): "We think the case may be justly placed on the broad ground, that there was an acceptance of the notes as genuine, and that it falls directly within the authorities which govern the cases of acceptance of forged drafts. If there be any difference between them, the principle is stronger here than there; for there the acceptor is [only] presumed to know the drawer's signature. Here, a fortiori, the maker must be presumed and is bound to know his own notes. He cannot be heard to aver his ignorance; and when he receives notes, purporting to be his own, without objection, it is an adoption of them as his own." This reasoning is so cogent and convincing, as respects cases arising under the law merchant, as to obviate the necessity for further quoting from or considering the drawer-drawee cases. From them, the inevitable conclusion is that plaintiff, as drawer of the check, was bound to know, when it was presented for payment, whether, when it mailed the check to Albert W. Sampson, it was payable to his order, as in the accompanying letter plaintiff said it was, or whether it was still drawn to the nonexistent S. W. Samson, and was afterwards altered to make A. W. Sampson the payee. It must be remembered, in this connection also, that the alteration of the name was not a skilfully hidden thing, but plainly observable when plaintiff paid the check.

In the light of the principles above stated, we have examined every one of our cases since the decision of Iron City Nat. Bank v. Fort Pitt Nat. Bank, supra, and find none which gives the slightest color to plaintiff's claim of a right to recover under the admitted facts here. In the case last cited, it will be recalled that the drawee bank was refused the right to recover back, because of five days delay in discovering the forgery; here we have 52 days delay in discovering the erroneous payment, and 5 days additional delay in notifying defendant, after plaintiff had actual knowledge thereof. In the case of a skillful forgery there might be some excuse, in fact if not in law, in failing to detect it. Here, where the alteration in the name was patent, even that excuse fails. But there can be no excuse for a failure to give immediate notice after the facts are known. In States v. First Nat. Bank, 203 Pa. 69, 74, it is said: "To recover from it, he was bound to give it notice as soon as he discovered the fraud practiced upon him, and the burden was upon him, on the trial below, to show that he had given such notice. Not having done so, he cannot recover." This is the rule in all our cases.

The judgment of the court below is reversed and judgment is here entered for defendant non obstante veredicto.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

The Market Street Title & Trust Company made out its check to S. W. Samson. The check was intended for A. W. Sanson. He was an attorney who was entitled to receive the money in payment of a mortgage. By mistake, the check was mailed to Albert W. Sampson, a police officer. When Sampson received the check he took it to the Chelten Trust Company. He had no account there and they knew nothing about him except that he was recognized by the teller who received the check from him as a police officer whom he had seen in the vicinity of the bank. When the check was presented it had been

altered so that the payee read "A. W. Sanpson." It was endorsed "A. W. Sampson." The teller did not pay the check, but put it to the credit of Albert W. Sampson in a saving fund. Instead of forwarding the check to the Market Street Title & Trust Company for collection, defendant endorsed it generally, guaranteeing the prior endorsement and forwarded it, presumably through the clearing house. A few days thereafter, Sampson called at the Chelten Trust Company, requesting that the funds represented by the check be put in such shape that he could draw against them. The Trust Company called up the plaintiff, asked if the check had been paid; plaintiff said that it had been, and thereupon the money was placed by the defendant to Albert. W. Sampson's credit generally and thereafter he drew it out.

The policeman's fraud resulted in his arrest and he was subsequently convicted and sentenced for his crime. He and his wife testified that they did not alter the check. The testimony on behalf of the plaintiff was that the check when it left its hands was unaltered. The inference is very strong that the man who perpetrated the fraud had forged the altered name of the payee, but this plays no important part in the matter. Subsequently the real payee of the check called upon the plaintiff for the money; this led to an investigation and the discovery of the fraud and this suit was brought by it against defendant to recover the amount of the check under its guaranty. I would hold the defendant liable, otherwise its guaranty of prior endorsements amounts to nothing. I think it should be determined that such an endorsement amounts to a declaration by the endorsing bank that the proper payee, the individual to whom the drawer of the check intended the money to be paid, had endorsed it, otherwise with the vast number of checks passing through banks in today's great volume of business, drawee banks will have no adequate protection against forgeries. The legal determination, so it seems to me, should be that a drawee bank

(or one as in this case which is both drawer of the check and drawee) need only look at the forwarding bank's endorsement; if that is a guarantee of prior endorsements, the drawee bank can pay to the bank so endorsing without being affected in any way by the invalidity of prior endorsements: Nat. Union Fire Ins. Co. v. Mellon Nat. Bank, 276 Pa. 212.

I think the case in hand is not ruled by Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230. There the paying and forwarding bank had not endorsed guaranteeing prior endorsements, but had endorsed for collection only, as the dissenting opinion discloses. That case involved an impostor to whom the drawer in fact meant the check to go, and the decision was expressly predicated on that fact. The impostor cases, as I understand them, are limited to the instances when the swindler presents himself in person and receives the instrument as his own. I am unable to agree that the plaintiff here, as drawer, intended Albert W. Sampson to receive payment merely because the envelope containing the check was addressed to him. The mistake, as pointed out by the learned president judge of the court below, was not as to the "identity" of the payee but as to his "residence and his exact name."

I can see no difference, so far as the application of legal principles is concerned, between the facts before us and as they would be applied if the police officer had found the check, or if a check drawn to John Smith had gotten into the hands of the wrong John Smith and been presented by him for payment. Defendant's teller who accepted the police officer's endorsement did not know that he was A. W. Sampson, save from his own statement, and knew nothing about the letter forwarding the check to him. He appeared at the Trust Company with the bare check, with nothing to show that it was his. Even though it be said that the plaintiff was initially negligent in allowing Sampson to get hold of the check, it can be said as a matter of law that this negligence was

not the proximate cause of the loss. It tended in no way to influence defendant's conduct in the matter. The rule is that the negligence of the drawer is immaterial unless it is of the kind that directly and proximately affects the conduct of the banker in the performance of his duties: Jordan Marsh Co. v. Nat. Shawmut Bank, 201 Mass. 397, 87 N. E. 740, and cases there cited.

The "one of two innocent persons rule," if it has any place in the case at all, should not cloak the defendant but the plaintiff. Defendant by its guaranteeing endorsement threw plaintiff off its guard and enabled the fraud to be perpetrated. Before allowing Sampson to use the check, it was the duty of the Trust Company to ascertain whether he was the real owner of it and had capacity to pass title thereto. No investigation was made as to his capacity to endorse. Section 61 of the Negotiable Instruments Act which provides, "The drawer by drawing the instrument admits the existence of the payee and his then capacity to endorse" means the real payee, not the forging one. The drawer merely warrants the capacity of the person to whom he wants the money to go, not the capacity of a swindler to endorse the name of that person: Nat. Union Fire Ins. Co. v. Mellon Nat. Bank, 276 Pa. 212; Joseph Milling Co. v. First Bank of Joseph, 109 Oregon 1, 216 Pacific 560; American Express Co. v. People's Savings Bank, 192 Iowa 366, 181 N. W. 701; Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 So. 651. As I understand the language of this section and as text writers understand it, in practical application it means that having drawn a check to a minor, the drawer cannot raise the question of his nonage, or, to a supposed corporation, that it was not incorporated, or any other incapacity of the intended payee, but the language does not cover misusers of the paper. See Uniform Laws Annotated, volume 5, page 300, and Supplement, page 149.

When the Trust Company's teller received the check from the forger, it clearly exhibited that it had been

altered, and when the latter endorsed it, he did not do so in the name of the payee as then drawn, which was "A. W. Sanpson." The endorsement is "A. W. Sampson." There was clear notice on the check as it then stood, not only of its alteration, but of a nonagreeing endorsement. The Trust Company, it seems to me, violated every dictate of banker's prudence in subsequently endorsing in the way it did and should not be permitted to saddle upon plaintiff the loss resulting from its lack of care, particularly so when account is taken of the fact that the endorser of the check was only known to the teller by sight and was not a depositor in the Trust Company and never had any dealings with it. As to the custom of banks to accept such checks for collection, it is sufficient to point out again that defendant did not restrictively endorse the check, but endorsed it generally and guaranteed the prior endorsement.

It is the duty of the accepting bank to make proper investigation to determine the identity of the one who endorses (United Security Life Ins. & Trust Co. v. Central Nat. Bank, 185 Pa. 586) and it warrants by merely signing after the name of the pretended payee the validity and genuineness of the instrument itself: Negotiable Instruments Act, sections 65, 66. If, as here, it further guarantees the endorsement, the drawee bank has the right to rely on such representation: Second Nat. Bank of Pittsburgh v. Guarantee Trust & Safe Deposit Co., 206 Pa. 616; Phila. Nat. Bank v. Fulton Nat. Bank, 25 Fed. (2d) 995. "The appellant bank in paying the check was bound to know at its own risk that the endorsements by which the holder of the check claimed title were genuine": McCornack v. Central State Bank, 203 Iowa 833, 211 N. W. 542, 544.

It is difficult for me to distinguish in principle the case at bar from Second Nat. Bank of Pittsburgh v. Guarantee Trust & Safe Deposit Co., 206 Pa. 616. There a draft was drawn upon the plaintiff bank, payable to the order of John Davis, a brother and beneficiary of

Benjamin Davis, who was a member of a fraternal organization. The name of John Davis was forged by someone on the back of the draft. This forged endorsement was followed by the endorsement of an official of the beneficial association. His endorsement was again followed by that of the defendant trust company, which guaranteed the previous endorsements. The draft, bearing these endorsements, was presented to the plaintiff and paid by it. Subsequently it was notified, not only that the endorsement of the name of John Davis, the payee of the draft was a forgery, but that a fraud had been perpetrated upon the beneficial order by falsely representing that Benjamin Davis, who was a member of the order, was dead and that his beneficiary, John Davis, was therefore entitled to receive the amount payable on his death. The defendant endeavored to avoid liability by averring that the draft was issued by the beneficial organization without proper precaution having been taken to ascertain whether or not the person insured was alive, and it set up that this negligence was imputed to the plaintiff bank by reason of its being the depositary of the funds of the order. As to this defense it was said: "The matter which it is thus sought to inject into the case as a defense has no proper place there. The liability of the defendant here is that of an endorser. The form in which its endorsement was placed upon the back of the draft, was not the mere writing of its name there, which of itself would create an implied warranty of the genuineness of the previous endorsements, but it was more; the defendant expressly guaranteed the previous endorsements. What reason then is there for excusing it from complying with the terms of its contract?...... The form in which the defendant endorsed the draft, makes clear its intention not only to transfer, but to be bound as endorser, and as guaranteeing the validity of the prior endorsements." But, it is argued, plaintiff's acts or negligence as *drawer,* in not noting the alteration when the check was returned to it and giving

prompt notice, prevent recovery. Reliance is placed largely on the case of United States v. Nat. Exchange Bank, 270 U. S. 527; see, also, Brady, The Law of Forged and Altered Checks (1925), section 86. If this were simply an action by a drawee bank against the collecting bank and the drawer were a third party not on the record, it is clear that liability would rest upon the defendant and negligence on the part of the drawer would be no defense: Second Nat. Bank of Pittsburgh v. Guarantee Trust & Safe Deposit Co., supra; Farmers' Bank of Abbeville, 116 S. E. 204; Brady, section 39. I agree, of course, that a drawee bank cannot maintain an action against a collecting bank unless it suffers a loss (Brady, op. cit. page 152), but I do not agree that anything done here by plaintiff, as drawer, would bar its right of action if it were suing its drawee bank. See Brady, page 455. In Union Tool Co. v. Farmers' & Merchants' Nat. Bank, 192 Cal. 40, 218 Pac. 424, the payee's name was altered and then the endorsement forged. The drawer was, nevertheless, permitted to recover from the drawee. The court said: "Assuming that the plaintiff (drawer) was negligent in not making a more thorough examination of the returned checks . . . . . . still the depositing bank may not escape liability for the payment of amounts paid on forged checks unless it has itself been free from negligence." In my opinion, therefore, defendant is liable to the plaintiff for money paid upon a forged endorsement, and plaintiff, as drawer or drawee, is not precluded from setting up the forgery, and that the case is essentially different from the so-called "impostor" cases, the "fictitious payee" cases such as Snyder v. Corn Exchange Nat. Bank, 221 Pa. 599, and also the cases in which the amount of the check has been raised or the check issued in such condition as to facilitate alteration, forgery and fraud. We are here dealing with a forged endorsement which had been guaranteed by defendant to be genuine. This act made the fraud and consequent loss possible, without

this guarantee the swindler would have been detected when the check came to plaintiff's hand.

I would further hold that the delay of five days in giving defendant notice of the forgery was not an unreasonable one under the circumstances. The Trust Company was no different from any other endorser and certainly an individual endorser would not be relieved by the delay. Furthermore, from my viewpoint the success of the forgery was due to the active negligence of the defendant and it should not be permitted to take advantage of its own lack of care. I would affirm the judgment.

Mr. Justice FRAZER and Mr. Justice SADLER joined in the dissent.