**UNITED STATES of America**

v.

**NATIONAL BANK OF COMMERCE IN NEW ORLEANS.**

**Civ. A. No. 69–271.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 2, 1970.

Charles H. White, Asst. U.S. Atty., Eastern District of Louisiana, New Orleans, La., for plaintiff-mover.

Henry P. Dart, III, of Dart & Dart, New Orleans, La., for defendant-mover.

BOYLE, District Judge.

This is an action by the United States of America against the National Bank of Commerce in New Orleans, hereafter referred to as the Bank, to recover the proceeds of twenty-two Treasury checks presented by the Bank to and paid by the plaintiff as drawee.

Cross motions for summary judgment brought by the plaintiff and the defendant came on for hearing on January 21, 1970. After submission of memoranda and oral argument, this matter was submitted to the Court for adjudication, there being no dispute as to the material facts involved.

The facts, appearing in the verified pleadings, and affidavits made a part of the record, are as follows:

Prior to May, 1965, Raymond Durwood Clark, Sr., a retired Civil Service employee, maintained a checking account, No. 0026–23–042, in the main office of the defendant Bank.

The Civil Service Commission, pursuant to Clark's request, mailed his retirement benefit checks to the Bank for deposit to his account, which checks were so deposited.

On May 27, 1965, unknown to the Bank or the Civil Service, Clark died. The Civil Service continued to mail checks payable to Clark to the Bank for deposit to his account.

The Clark heirs took no immediate steps to institute probate proceedings or to notify the Bank or the Government of Clark's death. On or about April 1, 1967, the heirs notified the Bank of the fact, but not the date, of Clark's death. When the next retirement check from the Civil Service payable to Clark arrived, the Bank returned the check with a notice that the payee had died.

On June 23, 1967, Joseph Defley, Jr., attorney, Port Sulphur, Louisiana, wrote a letter on behalf of the Clark heirs to the Bureau of Retirement and Insurance, U. S. Civil Service Commission, Washington, D. C., advising the Civil Service that Clark died in May, 1965. Civil Service did not notify the Bank that it had a claim for refund of the money represented by the checks issued between May, 1965, and April, 1967, nor did it notify the heirs or the attorneys for the decedent's estate that it had any claim of any nature against Clark's estate. On the contrary, Civil Service records indicate that when the heirs presented their claim for benefits under the Federal Employees' Group Life Insurance Plan in July, 1967, the Commission referred the heirs to the Office of Federal Employees' Group Life Insurance for payment. A claim form was submitted by the heirs through Mrs. Adelaide Baudier, attorney, New Orleans, Louisiana, dated July 11, 1967, which claim was acknowledged under date of July 26, 1967, by the Office of the Federal Employees' Group Life Insurance, copies of which documents are

a part of the record herein. Pursuant to this claim and acknowledgment, in July, 1967, the Federal Employees' Group Life Insurance paid the Clark heirs Five Thousand Six Hundred Dollars ($5600.00) in insurance benefits.

On July 24, 1967, Judge Clarence Dowling of the Civil District Court for the Parish of Orleans, in proceedings No. 466–245, Succession of Raymond Durwood Clark, Sr., signed a judgment of possession recognizing the named heirs as Clark's sole heirs, and sending them into possession of his entire estate, and, more particularly, Account No. 0026–23–042, standing in the name of the deceased in the defendant Bank. A certified copy of this judgment of possession was presented to the defendant Bank, and thereafter, the Bank delivered a check covering the entire balance remaining in the account, payable to the heirs, to the attorney for the succession. This occurred some four months after the Bank returned Clark's April, 1967, check to the Civil Service with the advice that Clark was then deceased, and one month after an attorney for the Clark heirs had written Civil Service advising of Clark's death in May of 1965.

In November or December of 1967, more than four months after the Bank had issued its check payable to the heirs, and some five months after the Civil Service had known that Clark died in May, 1965, the Civil Service first notified the Bank that Civil Service retirement checks to which Clark was not entitled had been paid into his account.

The Government demanded refund by the Bank, whereupon the Bank advised the Government that it had disbursed the funds to the heirs, and suggested that the Government make its claim against the heirs. The Government replied by filing this suit against the Bank for recovery of Seven Thousand Two Hundred Forty-One Dollars ($7241.00).

Counsel for the Government contends that, under Title 31, Code of Federal Regulations, Section 360.5,[1] the Government can recover from the defendant Bank on Government annuity checks issued to a deceased payee when the Bank guaranteed the absence of the payee's indorsement. It is the Government's position, further, that the Treasurer is not precluded from recovering merely because the Civil Service Commission failed to act timely after being informed of the payee's death.

The Bank contends initially that the Government has not suffered any loss since it has an available remedy under Louisiana law to proceed against the heirs to recover the amount erroneously deposited to Clark's account by the Civil Service Commission. Defendant further contends that any loss which the Government may suffer in this matter has been occasioned by the neglect or de-

1. 31 C.F.R. 360.5:

"The Treasurer shall have the right to demand refund from the presenting bank of the amount of a paid check if after payment the check is found to bear a forged or unauthorized indorsement or an indorsement by another for a deceased payee where the right to the proceeds of such check terminated upon the death of the payee, or to contain any other material defect or alteration which was not discovered upon first examination. If refund is not made, the Treasurer shall take such action against the proper parties as may be necessary to protect the interests of the United States."

31 C.F.R. 360.8(b) indicates the nature of the "indorsement" made by the defendant bank:

"When a check is credited by a bank to the payee's account under his authorization, the bank may use an indorsement substantially as follows:

"Credit to the account of the within-named payee in accordance with payee's or payees' instructions. Absence of indorsement guaranteed.

XYZ Bank.

"A bank using this form of indorsement shall be deemed to guarantee to all subsequent indorsers and to the Treasurer that it is acting as an attorney in fact for the payee or payees, under his or their, authorization."

This form was precisely that used by the defendant on the checks credited to Clark's account.

lay of its agents. The Bank further specially pleads the Government's laches as a defense to this action.

Under the facts of this case, as shown in the verified pleadings and uncontroverted affidavits and exhibits made a part of the record herein, it appears that the loss, if any, of which the Government complains was caused solely through the fault, neglect and delay of its own agents. In this suit, the Government seeks to place the onus of this negligence on the Bank who, it appears, acted in good faith and with due diligence throughout.

The Civil Service Commission had notice of the fact of Clark's death in April, 1967, and of the date of his death on or about June 23, 1967. Armed with this information, as well as the names of attorneys for the Clark succession, the Civil Service Commission took no action to reclaim the improvidently paid retirement benefits.

Upon receipt of notice of the date of death, the Government had a choice of at least three courses of conduct, each of which would have led to the recovery of the sum in dispute had its agents acted properly. Having been notified of the names and addresses of counsel for the Clark heirs, the Government could have appeared in the succession proceedings before the Orleans Civil District Court as a creditor of the Clark estate. Having failed to do so, the Civil Service Commission could have alternatively withheld payment of the deceased's insurance benefits pending return by the heirs of the retirement benefits. The Civil Service Commission, however, referred the heirs to its insurance office for payment of the insurance claim.

There remains to the Government a third avenue to recovery of these disputed benefits, under the Louisiana Civil Code, Article 1422,[2] by institution of a personal action against the heirs to discharge the debts of the deceased.

This case is readily distinguishable from the forgery and fraud cases cited by plaintiff in support of its position.[3] In the instant case, when the Government discovered the facts giving rise to its alleged loss, there had not yet been a loss, since the money was still in the Bank's hands, safely reposing in the Clark checking account.

Had the Government taken prompt (or, under these facts, even less than prompt) action, no loss would have been sustained by any party. This Court is unwilling to inflict a loss on the Bank where there has been no showing of a loss by the Government or of a causal relation between that loss and any prejudicial actions by the defendant Bank after it became aware of the date of Clark's death.

The Bank acted in good faith in paying out an account listed in a judgment of possession, under authority of La.R.S. 6:66.[4] It would be unreasonable to then hold the Bank responsible for

2. La.Civ.Code, Art. 1422, which reads in pertinent part:

"The personal action, which the creditors of a succession can exercise against the heirs, has for its basis the obligation, which the heirs are under, to discharge the debts of the deceased."

3. National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945) ; United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006 (1909) ; Jones v. United States, 106 F.2d 888 (5th Cir. 1939) ; United States v. Kiefer, 97 U.S. App.D.C. 101, 228 F.2d 448 (1955).

4. La.R.S. 6:66, which reads in pertinent part:

"Upon proper authority and upon obtaining a receipt therefor, any bank may transfer any money or other property in its possession, belonging to a deceased person, to the decedent's succession representative, heirs, or the legal representatives of the heirs.

"The letters of the succession representative or the judgment recognizing and putting the heirs in possession, issued by a court of competent jurisdiction, and accompanied by letters of tutorship or curatorship of the heirs who are not sui juris, shall constitute proper authority for making the transfer, which when so made and receipted for *shall be full protection to the bank.*" [Emphasis added]

knowledge in the possession of Government agents, upon which those agents, through their own inattention, failed to act.

It is the opinion of this Court that the instant case presents an opportunity for the application of the defense of lack of prompt notice set out in the *Clearfield Trust* case.[5] In that case, the Supreme Court noted:

"The National Exchange Bank case went no further than to hold that prompt notice of the discovery of the forgery was not a condition precedent to suit. It did not reach the question whether lack of prompt notice might be a defense. We think it may. If it is shown that the drawee on learning of the forgery did not give prompt notice of it and that damage resulted, recovery by the drawee is barred. [citations omitted] The fact that the drawee is the United States and the laches those of its employees are not material. Cooke v. United States, 91 U.S. 389, 398 [23 L.Ed. 237]. The United States as drawee of commercial paper stands in no different light than any other drawee. As stated in United States v. Nat. Exchange Bank, 270 U.S. 527, 534 [46 S.Ct. 388, 70 L. Ed. 717], 'The United States does business on business terms.' It is not excepted from the general rules governing the rights and duties of drawees 'by the largeness of its dealings and its having to employ agents to do what if done by a principal in person would leave no room for doubt.' Id., p. 535 [46 S.Ct. at page 389] * * *. Cases such as Market St. Title and Trust Co., supra [Market Street Title & Trust Co. v. Chelten Trust Co., 296 Pa. 230, 145 A. 848], place the burden on the drawee of giving prompt notice of the forgery—injury to the defendant being presumed by the mere fact of delay."

In the instant case, the facts are even stronger, since the uncontroverted evidence shows that not only did the Government have reason to presume that something was amiss, but it had actual knowledge from its records and the correspondence from Attorney Defley and from the Bank that retirement benefits had been paid to Clark after the date of his death. The conditions for a successful defense of lack of prompt notice set forth in *Clearfield Trust* are met in the present factual context.

For the foregoing reasons,

It is ordered that the Motion of the United States for a summary judgment in its favor against the National Bank of Commerce in New Orleans be, and it is hereby, denied.

It is further ordered that the Motion of the National Bank of Commerce in New Orleans for a summary judgment in its favor dismissing the complaint of the United States be, and it is hereby, granted.

---

5. Clearfield Trust Co. et al. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).