## KOLKER v. UNITED STATES.
### No. 947.

District Court, D. Maryland.
Sept. 19, 1941.

Simon E. Sobeloff and William Taft Feldman, both of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., and T. B. Harrington, Asst. U. S. Atty., both of Baltimore, Md.

COLEMAN, District Judge.

This is a suit by the plaintiff, Benjamin Kolker, trading as the Maryland Lumber Company, against the United States, brought under the provisions of Section 41 (20) of 28 U.S.Code Annotated, for the recovery of certain balances alleged to be due the plaintiff on two contracts made with the Government, under which the plaintiff agreed to supply the Government with certain trim or woodwork material, to be used in connection with two building projects of the Government being conducted by the Department of Agriculture.

There is no dispute as to the basic facts in the case with respect to the making of the contracts and what was done under them. The contracts were the result of bids received by the Government for this particular material, and it is stipulated in the case that the Government accepted the bids of the plaintiff on the stipulation or promise, made in the plaintiff's bid, for delivery at a particular time, that delivery being earlier than the delivery specified by another and the lowest bidder. Each contract contained the following clause: "Complete delivery of the material specified herein [the first contract] is required by November 18, 1936, [and by March 27, 1937, under the second contract]." Then the proviso goes on as follows: "Time of delivery will be a factor in making an award.

Bidders failing to insert on the face of the bid form the time required to complete delivery will be bound to the delivery requirements set forth herein."

It is stipulated in the case that under the first contract, although, as has just been indicated, delivery was called for by November 18, 1936, it was later extended by agreement to December 12, 1936. However, deliveries did not begin until February 19, 1937, under this contract, and were not actually completed until May 17, 1937.

Similarly it is stipulated with respect to the second contract that delivery was not actually required by the Government until April 8, 1937. However, delivery did not actually begin until May 5, 1937, and was not completed until June 9 of the same year.

The sums due under each of the contracts have been paid to the plaintiff with the exception of $519.40 under the first contract, and $212.48 under the second contract. It is for these amounts, totaling $731.88, with interest and costs, that the plaintiff now sues. In addition to a stipulation with respect to the facts just alluded to in regard to the making of and performance under the contract, considerable testimony has been taken by each side with a view to indicating, first, on the part of the plaintiff, why the delays occurred, and, second, with a view to indicating on behalf of the Government why these delays were unwarranted and caused damage to the Government.

The basis on which the Government has seen fit to withhold the amounts here in controversy is this: that since it is not possible to show by actual figures the actual damage that the Government has suffered in a case of this kind by reason of the size of the project, the number of contractors involved, the variations in the type of work, overlapping, etc., therefore, in lieu of such a showing, the actual damages may be assumed to be equivalent to the saving to the Government had the lowest bid been accepted. In other words, the Government's contention is that since time was expressly made the essence of the contracts with the plaintiff, and was known to the plaintiff at the time the contracts were entered into, because expressly stated in them; and that since a lower bid was rejected because that lower bid did not provide for as prompt deliveries, the Government is justified in a case of this sort in substituting, for lack of proof of actual damages, proof of what the material would have cost, had the lowest bid been accepted.

Shorn of all technicalities, there appear to be only two major points in the case upon which the decision must turn: first, has the Government waived the right, which it would otherwise have, to claim damages for a rather extensive delay; and, second, if it has not made any such waiver, is the difference between the two bids the measure of damages that it is entitled to claim, i. e., the amount it is entitled to withhold from the plaintiff by reason of the delay?

■■ Taking up the first point, namely, the question of waiver, the Court does not find that the evidence in the case is sufficient to establish that there has been a waiver. It is true that there is no evidence in the case sufficient to satisfy this Court that the Government gave any very definite, express, seasonable notice to the plaintiff that it was not satisfied with the final result. All of the material was used. And while the correspondence put in evidence indicates that from time to time the Government was displeased with some of the delays that had occurred, it is reasonable to infer from that correspondence, taken as a whole, that the Government rather acquiesced in and condoned the delay. Indeed, there is rather persuasive evidence, as to a considerable part of the delay, that the plaintiff had good excuse, because of the vagueness of the specifications which called for further negotiations and the preparation of additional figures, blueprints, etc., before plaintiff could proceed to carry out its part of the contract. But in any event, taking the facts as disclosed by the evidence as a whole, the Court is unwilling to say that the Government did in fact waive any right that it might have had to withhold something by way of damages. The contracts appear to have been made in Washington when accepted by the Government. But in a case involving the construction of such Government contracts, local law is not controlling. For this reason, and because we find there was no waiver on the part of the Government, it becomes unnecessary to consider this branch of the case further.

■ We then come to the second and final question: How are the amounts, the damages, to be proved? We know of no rule and, indeed, have been referred to no reported Supreme Court of Federal

decision, which discards the general common law rule which, in the absence of a provision in the contract for liquidated damages or penalties, is that there must be proof of actual damage before there can be any recovery or allowance for same.

We find in the present case that there is a total lack of any such proof. Indeed, the Government witness, testifying on this point, used commendable frankness in saying that he thought it was impossible, in the very nature of the contracts, to state the damage in terms of dollars and cents. He did, however, make the broad statement that he was satisfied that the delay had been detrimental to the Government in that the work had been generally retarded, although when pressed for more details, he could not say that occupation of the buildings into which went the materials supplied by the plaintiff, had actually been postponed by reason of the delays of the plaintiff himself. So, in the face of this situation the Government has resorted to the theory of damages already referred to, but, as already stated, has not cited to the Court any decision, but merely rulings of the Comptroller-General, in support of that theory.

On its part, the plaintiff relies largely upon the decision in the case of Wisconsin Bridge & Iron Co. v. City of Alpena, decided in 1927 by the Supreme Court of Michigan, 238 Mich. 164, 213 N.W. 93, 51 A.L.R. 1209, where the very theory here advanced by the Government was repudiated. In connection with the construction of a bridge in that case, the contract, as here, made no provision for remedy for delay by way of liquidated damages. In reversing the lower court, which had permitted the jury to adopt the theory advanced here by the Government, the Court said (238 Mich. at pages 167-170, 213 N.W. at page 95): "While the city authorities wanted the bridge quickly and for that reason accepted the higher bid with speedy delivery, no provision for liquidated damages for delay was incorporated in the contract.

* * * * *

"It is evident the jury took the difference in cost between the accepted and rejected bids as the measure of damages sustained by the city on account of the delay. In fact there was nothing else but pure conjecture and speculation.

* * * * *

"The contract did not stipulate any damage for delay. It is permissible, in cases where damage by delay is impossible of actual ascertainment by reference to any pecuniary standard, to stipulate the damage in advance, and, if reasonable, agreed damages for delay may be recovered by a municipality. Here we have an instance where no actual damage was or could be shown. * * * Remitting plaintiff to remedy under the low and unaccepted bid exacted a penalty and was not an admeasurement of damages. The contract must control.

"If a contract provides no remedy by way of liquidated damages, then damages in recoupment of the contract price must be established by evidence showing actual damages and the amount thereof, and this may not be done by going back to an offer not a part of the contract but excluded by the terms of the contract made. It is true the city got less speed under the accepted bid than it would have been entitled to have had under the lower bid, but the court has no power to make a new contract for the parties. Failure of plaintiff to perform within the time fixed in the contract gave the city the right to claim and recoup against the agreed price the actual damages sustained; such damages, if any, to be established only by evidence showing the nature and extent thereof. * * *

"The contract provided for no such measure, and the law leaves the city the right to recoup no more than actual damages. The difference between the two bids, in price and point of time for performance, may indicate clearly the desire to have the bridge quickly, but measures no actual damages."

It is to be noted that there is this difference between the Michigan case and the one here, namely, that the two bids under consideration there were made by the same contractor, whereas here we have the plaintiff and another, the lower, bidder. But on principle, there is no real distinction. Doubtless the fact that it is customary, in dealing with a contract for public works, to provide for liquidated damages or penalties, accounts for the lack of decisions, affecting the Federal Government, laying down the proper rule with respect to damages in the event of delay in delivery by a contractor. See United States v. Behan, 110 U.S. 338, 342, 343, 4 S.Ct. 81, 28 L.Ed. 168; Grand Trunk

Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823, rehearing denied, 6 Cir., 118 F.2d 252. In the last named case, the Circuit Court of Appeals, Sixth Circuit, cited with approval, the Michigan decision, supra.

■■ It is significant that in all of the rulings of the Comptroller-General, to which the Court has been referred by the Government in support of its theory of damages, there is not a single court citation in support of that theory. We may assume that the Comptroller-General's Office has for some time adopted this theory of damages and that it has been accepted by some contractors, but such a practice can obviously not be considered as controlling upon some other contractor, who sees fit to litigate the point and to have his particular rights determined by the judicial process.

For the reasons given, judgment will be entered for the plaintiff for the sum named, without interest.