**UNITED STATES v. CLEARFIELD TRUST CO. et al.**

**No. 7979.**

Circuit Court of Appeals, Third Circuit.

Argued May 22, 1942.

Decided July 29, 1942.

Paul A. Sweeney, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., Charles F. Uhl, U. S. Atty., and George Mashank, Asst. U. S. Atty., both of Pittsburgh, Pa., and George F. Foley and Robert Kaplan, Attys., Department of Justice, both of Washington, D. C., on the brief), for petitioner.

Roswell Dean Pine, Jr., of New York City (Gwinn & Pell, of New York City, and Reed, Smith, Shaw & McClay, and F. T. Ikeler, all of Pittsburgh, Pa., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action by the United States to recover the amount of a check drawn by it from the defendant endorsee who received it under a forged endorsement and by whom it had been paid. The check was drawn upon the Treasurer of the United States, payable through the Federal Reserve Bank of Philadelphia and bore date April 28, 1936. It was made payable to the order of Clair A. Barner for W. P. A. services rendered by him and was placed in the mail properly addressed to the payee at Mackeyville, Pennsylvania. Some unknown person obtained the check, forged the payee's name and cashed it at the store of J. C. Penney Company in Clearfield, Pennsylvania, who paid value in good faith. J. C. Penney Company endorsed the check to the Clearfield Trust Company which collected it from the plaintiff through the Federal Reserve Bank of Philadelphia. Shortly after this Clair A. Barner notified the timekeeper and the foreman of the W. P. A. project on which he was engaged that he had not received the check just described. It was not, however, until January 12, 1937 that notice was given the defendant of the alleged forgery and not

until August 31, 1937 that the defendant was first notified that the plaintiff was asking reimbursement upon the check. Suit was brought against the Clearfield Trust Company on November 16, 1939 and J. C. Penney Company subsequently intervened. The court below gave judgment for the defendant, giving as its reason the delay on the part of the plaintiff in giving notice of the forgery.

█ If the rights of the plaintiff are to be determined by Pennsylvania decisions the judgment of the lower court was right. It seems to us clear that under the Pennsylvania rule the rights of a drawer to recover against one who has received payment of a check under a forged endorsement are conditioned upon his giving prompt notice of the forgery. Market St. Title & Trust Co. v. Chelten Trust Co., 1929, 296 Pa. 230, 145 A. 848. We do not think the force of this rule can be avoided by describing it as a rule of laches and, therefore, not operative against the United States. If it applies at all it precludes recovery for it is hardly arguable here that notice to the defendant was given with reasonable promptness.

The most difficult point in the case is whether the plaintiff's rights are to be limited by the rule of diligence declared by the Pennsylvania courts. The learned trial judge concluded that they were and cited United States v. Guaranty Trust Company of New York, 1934, 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651, for the conclusion. That case, however, only declared a conflict of laws rule as to the title acquired in a foreign country by a transferee under a forged endorsement. It does not settle this case.

█ We think the question is rather whether the rule of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, applies so that we are constrained to look to the law as declared by the state courts as a measure of the rights and liabilities of the parties. We think it does not so apply. The plaintiff is not in federal court by virtue of diversity of citizenship, but by the expressed provision of the Judicial Code[1] giving it the right to sue. The payment for which this check was given grew out of services performed under an Act of Congress, the Federal Emergency Relief Act. 15 U.S.C. A. ch. 16, §§ 721–728. The forgery was an offense against the laws of the United States.[2] We think all these facts distinguish the situation from that presented in Erie R. Co. v. Tompkins, supra, where under the diversity of citizenship clause the sole purpose of federal court jurisdiction is to provide a tribunal to dispense justice impartially between citizens of different states. Our conclusion is strongly supported by a group of decisions in which the Supreme Court has been called upon to determine, in the light of Erie R. Co. v. Tompkins and cases following it, whether a particular question not expressly answered by the Constitution, treaties or statutes of the United States is to be determined by reference to state precedents or by federal courts in the light of their own body of decisions and their own notions of the proper rule of law. Thus the matter of interest in the recovery of taxes improperly assessed upon Indian lands was held to be a matter concerning which state decisions were not controlling.[3] The same result was reached where the problem was "the judicial determination of the legal consequences which flow from acts condemned as unlawful by the National Bank Act * * *."[4] So, too, the liability for interest of a surety on a bond furnished the United States to accompany a taxpayer's claim for abatement of tax liability was held to be a question upon which state decisions did not control the answer given by the federal court.[5] Likewise, the majority of the Court held it a federal ques-

---

[1] 28 U.S.C.A. § 41(1).

[2] 18 U.S.C.A. § 262: covering "Whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United States [this includes checks, § 261] shall be fined * * * and imprisoned * * *." This has been held to cover forged indorsements. Alvarado v. United States, 9 Cir., 1925, 9 F.2d 385; Hamil v. United States, 5 Cir., 1924, 298 F. 369.

[3] Board of Commissioners v. United States, 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

[4] Deitrick v. Greaney, 1940, 309 U.S. 190, 60 S.Ct. 480, 485, 84 L.Ed. 694. In this case the United States was not a party litigant but the plaintiff was a receiver of a National Bank and the receiver of the National Bank sues in federal court as an officer of the United States. 28 U.S.C.A. § 41(16).

[5] Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L. Ed. 1361.

tion whether one who had given a note to a bank as part of a plan to conceal its overdue bonds was liable even though the note was given prior to the formation of the Federal Deposit Insurance Corporation.[6] In the absence of an authoritative decision by the Supreme Court of the United States to the effect that Erie R. Co. v. Tompkins applies only in cases of diversity of citizenship [7] a subordinate federal tribunal would be exhibiting uncalled for temerity in offering such generalizations. We do not do so here. But we do think, however, that in this case the facts in litigation originate fully as directly from the Constitution and statutes of the United States as in the Supreme Court cases just mentioned and in this case, as well as in those, the federal courts are not bound in their determination of the legal consequences of the transaction by what the courts of the state, where the operative facts occurred, have held with regard to the general question involved.

Since it is concluded that the Pennsylvania decisions are not controlling, the matter is to be decided as a federal question from the "materials in hand." In this instance we already have an authoritative decision in United States v. National Exchange Bank of Providence, 1909, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann. Cas. 1184. Here it was held that the United States could recover from a bank which received the money on pension checks where the names of the payees had been forged and that the right to recover was not conditioned either on demand or the giving of notice. This decision makes the federal rule in cases where it is applicable for all lower federal courts. It governs us here. Since that decision it has been several times held that where notice of the forgery has been unreasonably delayed the endorsee under the forged endorsement is nevertheless protected if he shows loss resulting to him from the unreasonable delay.[8] The facts in this case, however, fall short of such proof.[9]

The most they show is that if notice is given promptly J. C. Penney employees can often locate the person who cashed a check

---

[6] D'Oench, Duhme & Co., Inc., v. Federal Deposit Insurance Corporation, 1942, 315 U.S. 447, 62 S.Ct. 676, 86 L. Ed. 956. The concurring opinion of Mr. Justice Jackson called for a more express delimitation of Erie R. Co. v. Tompkins and Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, than the majority thought it necessary to make. The majority, by stating that the question was a federal one in the particular case obviously were not called upon, in order to decide it, to determine whether Erie R. Co. v. Tompkins was irrelevant in all cases not based upon diversity of citizenship. The question was avoided in United States v. Bethlehem Steel Corporation, 1942, 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855. Decisions of lower federal courts since Erie R. Co. v. Tompkins are in disagreement as to whether the rights and liabilities under a contract made by the United States are to be measured by the decisions of the state courts or by the laws declared in federal cases. To the effect that the state decisions do not apply see: Kolker v. United States, D.C.Md.1941, 40 F.Supp. 972; United States v. Grogan, D.C.Mont.1941, 39 F.Supp. 819; Byron Jackson Co. v. United States, D.C.S.D.Cal.1940, 35 F. Supp. 665. Contra: Alameda County v. United States, 9 Cir., 1941, 124 F.2d 611; United States v. Brookridge Farm, Inc., 10 Cir., 1940, 111 F.2d 461.

[7] Compare the concurring opinion of Mr. Justice Jackson in the D'Oench case referred to in footnote 6.

[8] Ladd & Tilton Bank v. United States, 9 Cir., 1929, 30 F.2d 334; United States v. National Rockland Bank, D.C.Mass. 1940, 35 F.Supp. 912; United States v. National City Bank of New York, D.C.S. D.N.Y.1939, 28 F.Supp. 144.

[9] The facts were stipulated by the parties and relevant paragraphs on this point read:

"9. The J. C. Penney Company store in Clearfield, Pennsylvania, cashes many hundreds of checks each year for purchasers or probable purchasers of merchandise. If a check is returned unpaid or is returned for reclamation a short time after the date on which it was cashed, the J. C. Penney Company employees can often locate the person who cashed the check through the one who vouched for him or by checking with the clerk who took the check, and having him proceed immediately to locate the customer who cashed it."

"10. At the time the Clearfield Trust Company and J. C. Penney Company were notified of the alleged forgery, none of the J. C. Penney Company employees were able to remember anything about the transaction or the check in question, and although they made diligent inquiries, they have been, and still are, unable to ascertain the identity of, or to locate, the person who presented said check to it or

at their store and that in this case inquiries have failed to locate the person who presented the check out of which this litigation arises. The most that can be concluded from this is that if they had had a prompter notice they might have been able to locate the imposter. This is insufficient to take the case out of the rule of the United States v. National Exchange Bank of Providence, supra.

The judgment of the District Court is reversed and the case remanded for proceedings not inconsistent with this opinion.

to recover the money and/or merchandise paid over to him. The Clearfield Trust Company acted in the transaction only as the collection agent of J. C. Penney Company and has no knowledge with respect to the identity of the alleged forger."