114

**FIRST CAMDEN NAT. BANK & TRUST
CO. v. ÆTNA CASUALTY &
SURETY CO.**

No. 7996.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 22, 1942.

Decided Dec. 4, 1942.

Rehearing Denied Jan. 8, 1943.

Joseph W. Henderson, of Philadelphia,
Pa. (Rawle & Henderson, of Philadelphia,

Pa., Starr, Summerill & Lloyd, of Camden, N. J., Alfred E. Driscoll, of Newark, N. J., and Thomas F. Mount, of Philadelphia, Pa., on the brief), for appellant.

Wm. T. Boyle, of Camden, N. J. (Boyle & Archer, of Camden, N. J., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

On February 28, 1935 the United States entered into a contract with William Eisenberg & Sons Inc., a New Jersey Corporation, to build a dam in Ohio. As required by the Heard Act, 40 U.S.C.A. § 270, the contractor furnished a bond on which the defendant, the Ætna Casualty and Surety Company, was surety, to secure performance of the work and payment of claims for labor and materials. The application for the bond provided that the contractor "assign [s], * * * all the deferred payments and retained percentages * * * and all monies * * * that may be due and payable to * * * principal (s). * * *" "If the principal (s) fail [s] to pay bills incurred on the work, when they become due and payable, * * *"

In the latter part of December, 1936, the contractor found itself in financial difficulties and unable to pay the outstanding bills for labor and material used on the job. After extensive negotiations between the contractor, the plaintiff bank and the surety company, the latter made the following offer to the bank: In consideration of the bank loaning $30,000 to the contractor to pay bills for labor and material, the surety agreed that: (1) Its bond was valid; (2) it was liable for claims listed in the offer; (3) if the bank took assignments from listed material and labor claimants in the amount of the bank's loan, the surety company would recognize them and pay the same six months after the final settlement of the government contract, and in any event not later than February 23, 1938. There was an additional provision that "The situs of this guaranty is New Jersey and shall be construed under the laws of said state." Following the receipt of this letter, the bank advanced the money to the contractor, and took assignments from laborers and materialmen to the extent of its loan.

Thereafter the contractor's officers, Harry and Israel Eisenberg, upon demand of the surety company, agreed that they would endorse all future checks received from the United States to the surety. On January 10, 1938, the contractor received the final payment check of $58,299.21. Contrary to the agreement with the surety company, this check was desposited to the contractor's account in the Northwestern National Bank of Philadelphia. The contractor then drew a check on this account in favor of the appellee bank for $20,500, the amount of an unsecured debt owed the bank. The bank applied the check to this debt, with knowledge of its source. [1]

On October 8, 1938, the bank brought suit against the surety company on the assigned claims guaranteed by it. The defendant counterclaimed for $917.76 which it alleged represented a sum misapplied by the bank in payment of interest on an unsecured loan to the contractor. It also sued as third party defendants, (1) the contractor for breach of its contract of indemnity in the event of recovery by the bank and (2) the officers of the contractor for breach of their agreement to endorse to it the final payment check of the United States. The action was tried by a judge without a jury. The trial court gave judgment to the surety company on its claims against the third-party defendants. There has been no appeal from these judgments. The trial judge dismissed the counterclaim as not supported by the evidence and this action is not appealed from. The surety company was held liable on its guaranty in the amount of $20,500 [2] and it has appealed from that judgment.

The appellant contends that the rights and liabilities of the litigants are governed solely by federal law which gives it two defenses to this action: 1. Since the bank knew that the $20,500 came from funds representing a payment by the government on the construction contract, it was under a duty to apply it to the assigned claims for material and labor. 2. The surety had an equitable lien on the government payment enforceable by it against the bank.

[1] There was no finding by the trial judge to this effect. However, he stated in his opinion that he believed this to be the case.

[2] The bank loaned $29,912.36 to the contractor. The defendant has paid the bank $9412.36 with interest, this payment being made without prejudice to either party to the suit. The bank sued for the balance of the loan, $20,500.

We do not think that federal law is the sole determinant of this litigation. The bank is not suing on the bond on which the appellant is surety. If that were the case, the federal court would have jurisdiction not by virtue of diversity of citizenship and the amount in controversy, but by express mandate of the Heard Act, authorizing suit in the federal court in the name of the United States, irrespective of the amount in controversy. 40 U.S.C.A. § 270. Then federal law might well be controlling. See United States v. Clearfield Trust Co., 3 Cir., 130 F.2d 93. But this is not a suit under the Heard Act, but an action upon a contract between nongovernmental parties, the bank and the surety company. The forum is the federal court because of diversity of citizenship [3] and a controversy involving more than $3,000. These jurisdictional facts were carefully alleged in the complaint. The federal court must therefore look to the applicable state law to determine the litigants' rights and liabilities flowing from the contract sued upon. The agreement between the bank and the surety was made after the surety and the contractor had contracted with the United States and in view of a situation arising out of events which had occurred in the progress of performance of that agreement. Whether this fact affects the rights of either will be considered at the appropriate place in the course of this opinion.

The First Defense:

Bank's Duty To Apply Payment To Labor And Material Claims.

The contract between the bank and the surety is governed by the law of New Jersey. The letter of the surety to the bank constituted an offer which was accepted in New Jersey by the bank when it made the loan there to the contractor. See Restatement, Conflict of Laws, 1934, § 324. The payment by the contractor to the bank also occurred in New Jersey. The surety's promise to pay the bank, if the occasion for such payment arose, was doubtless to be performed in that state. See Restatement, Conflict of Laws, 1934, § 355. And for

whatever significance it may have, the offer of the surety company stated that the "situs" of the contract was New Jersey. These considerations all point to the conclusion that the propriety of the bank's application of the contractor's payment is to be determined by New Jersey law. Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Under the law of that state the surety's first defense fails. Grover v. Board of Education of Township of Franklin, Ch. 1928, 102 N.J.Eq. 415, 141 A. 81, affirmed in 1929, 104 N.J.Eq. 197, 144 A. 918. This case held that a materialman was under no duty to a surety on a municipal construction contract, to apply monies received from the contractor without any direction as to their application, to debts arising from the construction job, although the materialman knew that the monies were received by the contractor as a payment for the job.

The surety points to federal decisions in cases arising under contractors' bonds furnished pursuant to the statute, where a result opposed to the New Jersey decision has been reached. R. P. Farnsworth & Co., Inc., v. Electrical Supply Co., 5 Cir., 1940, 112 F.2d 150, certiorari denied, 1940, 311 U.S. 700, 61 S.Ct. 139, 85 L.Ed. 454; United States v. Johnson, Smathers & Rollins, 4 Cir., 1933, 67 F.2d 121.[4] These, it urges, control here. The gist of the contention is that the agreement with the bank is merely a supplement to the bond already furnished by Ætna, since it guarantees the payment of certain claims which, if unpaid, would have been made against Ætna under its bond. The legal position of the bank, so far as Ætna is concerned according to the latter's argument, is the same as though the bank, as the assignee of labor and material claims, had sued on Ætna's bond.

This position gives too little effect to what the parties did. Had the bank been content with merely an assignment of laborers' and materialmen's claims as security for an advance to the contractor, no separate contract with the surety would

---

[3] Although the plaintiff is a national bank, under the Judicial Code it is deemed a citizen of the state in which it is located. 28 U.S.C.A. § 41(16).

[4] Delaware Dredging Co. v. Tucker Stevedoring Co., 3 Cir., 25 F.2d 44 decided by this Court in 1928, upheld the action of the trial court in applying a payment from a contractor to one who

furnished labor and material, to the oldest debt, which was not the one for work on the construction job, in a suit under the Heard Act. However, there is no indication as to the source of the payment, nor knowledge thereof by the claimant.

Cf. California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 1942, 129 F.2d 751.

have been necessary. But there was a separate contract, the terms of which were arrived at following negotiation. The essential operative facts make it a New Jersey transaction; the paragraph in the surety's letter, referring the transaction to New Jersey, shows the intention of the parties that their bargain looked to a New Jersey agreement. We do not need to pass upon the question of what the effect of the stipulation would be if the expressed intention provided for one governing law and the other facts indicated the application of another. Here the two coincide. Whatever are the rights and obligations of the surety under its contract made pursuant to the Heard Act, those of the bank under the separate agreement which stands on its own feet must be given effect. Under that agreement, which is governed by New Jersey law, the conclusion is inescapable that the bank could apply the payments as it wished. The first defense, therefore, fails upon the authority of the Grover case, supra.

### The Second Defense: Equitable Lien.

██ The surety has advanced a claim to an equitable lien. The theory is predicated upon the contractor's assignment in its application for the bond of the retained percentages and payments upon default. However, whether this premise be founded upon federal law or state decision, as against the bank it must fail. First, as to the federal law. Although a surety may obtain relief by way of an equitable lien founded upon an assignment to it of future payments, the lien is unenforceable as against a transferee for value without notice of the assignment. Martin v. National Surety Co., 1937, 300 U.S. 588, 596, 597, 57 S.Ct. 531, 535, 81 L.Ed. 822; [5] Walker v. Brown, 1897, 165 U.S. 654, 664, 665, 17 S. Ct. 453, 41 L.Ed. 865; Stepp v. McAdams,

9 Cir., 1937, 88 F.2d 925; Tobin v. Insurance Agency Co., 8 Cir., 1935, 80 F.2d 241, 243. Accord: Restatement, Restitution, 1937, § 172. Here, the trial judge expressly found that the bank did not know of the assignment nor of the agreement giving the surety control over the payments to the contractor and this finding is not attacked by the appellant. The debt owed by the contractor to the bank was discharged, to the extent of payment, when the bank accepted the contractor's check therefor. The antecedent debt was value. Swift v. Tyson, 1842, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865. Accord, Restatement, Restitution, 1937, § 173.

██ The result is equally clear under New Jersey law. It has been held there that a surety's claim to funds remaining in the hands of the state highway commission, founded upon an assignment similar to the one made to the surety here, was void as to claimants for labor and material because the contractor retained dominion over the contract monies. Stulz-Sickles Co. v. Fredburn Const. Corporation, Ch.1933, 114 N.J.Eq. 475, 169 A. 27. [6] Although the contractor here agreed to turn over the payments to the surety, it nevertheless was allowed to collect those funds without any supervision or control. This, we think, is sufficient to render the assignment void under the Stulz-Sickles Co. case, if it was effected in New Jersey. [7] Wherever it was made, the payment to the bank which discharged the claim of the latter against the contractor was a New Jersey transaction. Under New Jersey law, as under the federal decisions, the equitable lien would not survive against a bona fide transferee. Smithhurst v. Edmunds, Ch.1862, 14 N.J. Eq. 408, 417–419. The bank had no knowledge of the assignment. It is a transferee for value. N.J.S.A. 7:2–25. The assignment, therefore, cannot avail the surety in this case.

---

[5] "After payments have been collected and are in the hands of the contractor or subsequent payees *with notice*, assignments may be heeded. * * * An assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor or of persons claiming under him *with notice*." (Italics added).

[6] The Grover case points out that the contractor had made no assignment to the surety company and that the purported

assignment in the application for the bond did not become operative because it was conditioned upon default, which was not shown. However, as stated, the Stulz-Sickles case renders such an assignment void unless the assignor does not retain any dominion over the subject matter.

[7] The record does not disclose where the assignment was made. It may have been in Connecticut, the home office of the surety company. It may have been in Pennsylvania, since it bore a notary seal of that state.

This, we think, covers the case. The defendant calls to our attention decisions arising out of contractors' bonds like Prairie State Bank v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, and Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Maryland, 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547. We think they do not control, even if the facts were like those of this case, which they are not, for reasons already developed. Whatever the rights and liabilities of the parties might be if they were measured solely by a bond given under the Heard Act and transactions arising thereunder, here they have made a subsequent agreement which we find to be governed by New Jersey law. That law supports the plaintiff's claim. While it is true that the form which equitable relief may take in a federal court is a matter of federal law, Black & Yates, Inc. v. Mahogany Ass'n, Inc., 3 Cir., 1942, 129 F.2d 227, certiorari denied, 1942, 63 S.Ct. 76, 87 L.Ed. ——, the substantive rights giving rise to such relief are measured by the rule, state or federal, which the facts make appropriate. In this case it is the law of New Jersey, correctly found and applied by the trial court.

The judgment of the District Court is affirmed.