Whitaker, Judge,
delivered the opinion of the court:
Plaintiff was the surety on the performance bond of the Joseph A. Holpuch Company, which had a contract for the erection of a hospital building and nurses’ quarters at the Veterans’ Administration Home at Leavenworth, Kansas.
On April 1, 1932, the Holpuch Company’s contract was terminated, due to, according to the findings of the contracting officer, its failure to proceed with such diligence as would insure completion of the contract by the agreed date. Thereafter, plaintiff-and the Veterans’ Administration entered into an arrangement, under which plaintiff agreed to take over performance of the contract and sublet it to Joseph A. Holpuch Company. Pursuant to this agreement, plaintiff and the Holpuch Company entered into a contract on April .25,1932, whereby the Holpuch Company agreed, as the plaintiff’s subcontractor, to perform all work required by the contract. Thereafter, all payments due from the defendant were made to the plaintiff and the plaintiff in turn transmitted them to the Holpuch Company.
In this suit plaintiff sues for certain excess costs incurred for work done which it alleges was not required by the contract, and it also sues for damages for delays caused by an independent contractor who had a contract with defendant for the installation of the plumbing and other mechanical work.
Defendant defends, first, on the ground that whatever excess costs may have been incurred and whatever damages may have been sustained were incurred and sustained by the Holpuch Company and not by plaintiff and, therefore, it says plaintiff cannot recover.
*786 This is not a good defense. When the Holpuch Company’s right to proceed was terminated, the surety company, by agreement, was substituted for it as the prime contractor, subject to the obligations of the contract and entitled to all rights and benefits accruing under it. Fidelity & Casualty Co. v. United States, 81 C. Cls. 495. If excess costs were incurred, they were incurred by plaintiff, so far as the defendant is concerned. This is clearly true in a case where the surety employs another contractor to complete the work. That the same contractor was employed would seem to make no difference.
It may be that the surety undertook to require the Holpuch Company to bear these excess costs, but whether or not it did or whether or not it succeeded, the record does not show. But even if it did, this does not relieve the defendant from liability. Defendant has not paid whatever debt it owes. Its obligation has not been discharged. Whatever may have been paid by the Holpuch Company was not paid for the account of the United States.
The first item of plaintiff’s claim is for the cost of changing certain barrel bolts on window screens. On final inspection by the Government’s officers plaintiff was required to change them in order to make a more workmanlike job. Plaintiff did so, at a cost of $387.20. We do not need to decide, however, whether or not plaintiff’s superintendent of construction was justified in requiring the change, because plaintiff made the change without protesting to the contracting officer against being required to do so. Article 6 of the contract gave the Government “the right to reject defective material and workmanship or require its correction.” If plaintiff thought the job was not defective, it was required by article 15 of the contract to present the matter to the contracting officer for his decision. This article provides:
* * * all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the department concerned. * * *
Plaintiff did not present the matter to the contracting officer and, therefore, is not in position to complain of the requirement of the superintendent of construction.
*787 Plaintiff’s next claim is for the cost of installing access panels not required by the plans and specifications. Plaintiff was required by the superintendent of construction to install 61 panels which were not required by the plans and specifications. This was extra work required of plaintiff, but plaintiff cannot recover therefor, in view of article 5 of the contract, which provides:
* * * no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order.
This work was not ordered in writing by the contracting officer. On the contrary, when the superintendent of construction advised the contracting officer that he had ordered the installation of these 61 extra panels the contracting officer ruled that they were not to be installed.
The purpose of article 5 is to protect the Government against the cost of extra work ordered by a subordinate, but not approved by the contracting officer. Had plaintiff waited to secure the ruling of the contracting officer the additional access panels would not have been installed, and plaintiff would not have incurred the additional expense.
Plaintiff’s next claim is for $332.75 for membrane waterproofing. The superintendent of construction ruled that this work was required by the plans and specifications. Plaintiff did the work without presenting the dispute to the contracting officer and, for the reasons stated above, cannot recover.
The next claim is for $3,993.00 for wood terrazzo grounds. These wood grounds were not called for in the specifications, but the superintendent of construction required plaintiff to use them because it was good practice to do so, and because they were necessary to do a workmanlike job.
Some justification for the ruling is to be found in section 24 C (19) of the specifications, under the general heading of “carpentry.” This section reads:
Wood grounds shall be provided where shown or required for plastering, for securing all wood trim or other finished woodwork and for securing the work of all trades. * * *
*788 But the contractor protested to the contracting officer against this ruling of the superintendent of construction and asked for an order in writing on the ground that this was an extra. The contracting officer, however, ruled that the contract required the work to be done, but left to the plaintiff the settlement of the dispute as to which of its subcontractors would be required to do the work. This ruling of the contracting officer as to whether or not these wood grounds were required by the specifications, being a ruling on a question of fact, is final under article 15, supra, in the absence of appeal to the head of the department. No appeal was taken and plaintiff, therefore, is bound by the ruling.
Plaintiff’s next claim is for the cost of repairing cracks in the plastering, in the amount of $497.23. Under the specifications the contractor was required to maintain in the building a minimum temperature of 40° F. while the plastering was going on. In order to obtain this temporary heat the contractor was permitted to connect the radiators for the buildings to the then existing heating system at the Veterans’ Administration Home. It developed, however, that this heating plant was not sufficient to maintain heat in the Veterans’ Home and also in the buildings under construction, and while the plastering was being done the defendant shut off the heat in the buildings under construction. As a result the wet plaster froze, causing it to disintegrate. Plaintiff was required to replace it or repair it, which it did, at a cost of $452.03. It presented claim to the contracting officer, but its claim was denied because the contracting officer said, “there is no provision under your contract for the payment of an item of the nature.”
The damage to the plastering was clearly the fault of the defendant in failing to furnish the temporary heat which it had agreed to furnish and plaintiff is entitled to recover the damage resulting therefrom.
Plaintiff’s claim is in the amount of $497.23, but this includes $41.09 for overhead, and $45.20 for profit. It is entitled to recover only the damage actually suffered, which was the actual cost of repairing or replacing the plaster; *789 it is not entitled to recover profit. Plaintiff is entitled to recover $452.03.
Plaintiff also claims $738.30 for brushing plaster made necessary by the failure of defendant to furnish the necessary heat. Plaintiff is entitled to recover this amount, less the amount included therein for profit, which is $67.11. Plaintiff is entitled to recover on this item the sum of $671.19.
Plaintiff’s next claim is in the amount of $13,403.97 for extra furring. The specifications provide that all pipes, ducts, etc., for plumbing and heating work, except in unfinished rooms, should be enclosed by masonry or furring, unless indicated otherwise. It was found, however, that a great many horizontal and vertical pipes had to be run in places not shown by the drawings, due to discrepancies between the mechanical and architectural drawings, of which there were about 500. The location of the pipes was determined by the defendant’s superintendent of construction as the work progressed. This required the contractor to do a great deal of furring not called for by the drawings. This was done by plaintiff at the direction of defendant’s superintendent of construction. It was an extra made necessary by defendant’s defective drawings, but plaintiff is barred from recovery therefor by article 5 of the contract, quoted above. Before doing this extra work plaintiff was required by the contract to obtain an order in writing. This it did not do.
Plaintiff’s next claim is for adjusting windows, $613.77. In fitting the window sash into their frames plaintiff allowed the customary clearance in order that the sash might be moved freely up and down. Thereafter, on account of the moist conditions in the buildings due to plastering, the sash swelled and became too tight for operation. Defendant’s superintendent required plaintiff, over its protest, to plane the window sash. After the plastering had dried the windows rattled and defendant’s officers required plaintiff to tack maple strips to the windows to bring them back to their proper width. The cost of doing this was $613.77, including overhead and profit. This was extra work made necessary by the fault of the defendant’s superintendent *790 of construction in ordering plaintiff to plane the windows in the first place. However, plaintiff is not entitled to recover therefor on account of its failure to secure from the contracting officer an order in writing for this extra work.
Plaintiff’s last claim is for damages for delays caused by failure to do promptly the plumbing, heating, electrical work, etc. The P. H. Meyer Company, of Louisville, had an independent contract with defendant for the doing of this work, but its right to proceed under its contract was can-celled on March 31, 1933, and thereafter this work was performed by the defendant itself.
It is admitted the Meyer Company did delay plaintiff, but plaintiff cannot recover from this defendant therefor. It is clearly not entitled to recover from the defendant damages for delays caused by an independent contractor, and not involving any fault on the part of defendant. It was not the defendant that caused these delays; they were caused by a third party.
But the findings of fact of the Director of Construction of the Veterans’ Administration, approved by the Assistant Administrator of the Veterans’ Administration, show that after the defendant took over "this work from the P. H. Meyer Company there was still some delay on the job. For such delay plaintiff is entitled to recover; but the proof does not show the amount of the delay nor the damages caused thereby. Plaintiff undertook to show its damage for the entire delay caused by the doing of the plumbing, electrical, etc., work, both the delay caused by Meyer Company and the delay caused by the defendant, but it does not separate the two. For failure of proof, no recovery can be allowed on this item.
It results that plaintiff is entitled to recover on the whole case the sum of $1,123.22. Judgment for this amount will be entered. It is so ordered.
Madden, Judge; and Littleton, Judge, concur.
Whalet, Chief Justice, dissents.
Jones, Judge, took no part in the decision of this case.