**BROWN & ROOT, Inc.**
v.
**UNITED STATES.**
No. 49396.

United States Court of Claims.
Dec. 1, 1953.

Ben H. Powell, Jr., Austin, Tex., Powell, Wirtz & Rauhut, Austin, Tex., on the briefs, for plaintiff.

Frank J. Keating, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff sues to recover $3,000 which the defendant is said to have improperly withheld from the final payment on a contract between the parties for the construction of a 16-mile water pipeline during 1943. This sum was retained by defendant on the ground that it was required to pay the claims of certain owners of property adjacent to the pipeline for injuries caused by plaintiff. The nature of the case requires a rather full statement of the facts.

Plaintiff is a Texas corporation engaged in the business of general construction contracting. By contract dated June 29, 1943, between plaintiff and defendant, the latter acting through the Federal Works Agency, it was agreed that plaintiff would construct a 36-inch cast iron water pipeline from Calallen to Corpus Christi, Texas, a distance of 16 miles. The plaintiff was to furnish all materials and perform the work in accordance with the specifications for the sum of $940,725. It was provided that the Government would furnish a right-of-way 50 feet in width and that any additional right-of-way or easements required should be provided by the contractor. This and other provisions relating to responsibility for damages due to the contractor's negligence and various specifications here relevant are set out in detail in finding 3 and will be dealt with more specifically in connection with the various claims.

The defendant acquired title to an easement for a 50-foot right-of-way by filing "Declarations of Taking" in condemnation proceedings, but the question of compensation was not settled until after the completion of the contract, when settlement was made for the 50-foot permanent easement, damages to the surface on the 50-foot right-of-way, along with other claims against the Government as well as those against the contractor.

Pursuant to its obligation under the contract to furnish engineering-architectural supervision of the construction, defendant employed the firm of Myers and Noyes, architect engineers, who acted in that capacity until completion of the contract. Actual day-to-day control of the work was carried out by plaintiff's vice president, Mr. J. M. Dellinger.

The work was completed well within the contract time and on November 24, 1943, Myers and Noyes certified to the contracting officer, Federal Works Agency, that " * * * all work has been performed according to contract. We recommend * * * acceptance of the project and payment of the final estimate." The pipeline was placed in use on December 8, 1943. Shortly thereafter the contracting officer's assistant regional engineer advised plaintiff that $3,000 would be withheld from the final payment on the contract pending the disposition of the claims of five adjacent landowners for damage done by plaintiff beyond the 50-foot right-of-way. Plaintiff protested this action, contending that the contract had been complied with and any liability which it might have incurred to the landowners was the sole responsibility of plaintiff which defendant had no right to settle. At one point plaintiff offered its bond for $3,000 as assurance that recovery could be had against it for any legitimate claim. The bond was refused and defendant's agents proceeded to settle various claims for lump-sum payments, irrespective of whether they were asserted against the Government or the contractor. Subsequent to these actual payments the F. W. A. officials in charge estimated the portion of the settlements which they regarded as allocable to plaintiff, and plaintiff was charged accordingly. The total so charged was $2,070, and plaintiff was offered the remaining $930 of the $3,000 withheld. This was refused on the ground that in settling these claims against plaintiff the defendant acted as a volunteer, and plaintiff was entitled to the full $3,000 with-

held from the contract price. Pursuant to the dispute clause of the contract,[1] the matter was appealed to the Administrator, Federal Works Agency, who made findings of fact and affirmed the action taken by the contracting officer. Suit in this court was subsequently instituted.

■ It is unquestioned that plaintiff is entitled to the full contract price unless, as defendant asserts, plaintiff breached the contract and damage to defendant resulted. Defendant contends that it has shown such a breach by plaintiff and that the damages suffered are represented in the amounts which it was *obligated* to pay the landowners. Having alleged a breach of contract, the burden is on the Government to prove damages, which in this case involves establishing that it was *obligated* to pay the amounts expended. Spartan Aircraft Co. v. United States, 100 F.Supp. 171, 120 Ct.Cl. 327; General Steel Products Corp. v. United States, D.C.N.Y., 36 F.Supp. 498; see also Annotation 38 A.L.R. 566, 589. It should be noted in passing that while defendant argues that certain portions of this case are exceptions to the general rule of liability in independent contract situations, the plaintiff's status as an independent contractor is not in dispute.

Inasmuch as the amount deducted from the contract price was expended in five separate settlements, each involving somewhat distinct factual situations, we deem it expedient to deal with each in turn.

### I. The Rand Morgan Settlement

According to defendant's evidence, Mr. Morgan owned, or represented owners of, five parcels of land through which the pipeline passed and on which an easement 50 feet wide and 1,191.2 rods in length had been obtained by the Government in the "Declaration of Taking" referred to, supra. Prior to the settlement here in question Mr. Morgan is alleged to have asserted claims to defendant's investigators totaling $5,984.74, which a summary of the investigators' records show to have been broken down as follows:[2]

| | |
|---|---:|
| (a) 1,191.2 rods of 50-foot easement | $1,191.20 |
| (b) Crop damage on 50-foot easement, one-half bale per acre at $128.50 per bale... | 1,452.05 |
| (c) Crop damage on additional 30-foot strip used by contractor outside 50-foot right-of-way | 866.09 |
| (d) Clay on topsoil (over right-of-way) | 225.40 |
| (e) Cattle killed from eating poisoned cotton | 500.00 |
| (f) 35 acres of land flooded, crops lost due to interference with drainage | 1,750.00 |
| Total | $5,984.74 |

It appears that this entire claim was settled by defendant for $4,044.09 and $1,070 of this amount was charged to plaintiff on the theory that plaintiff had (1) violated the contract by using a strip 80 feet in width rather than confining

---

1. With regard to disputes the contract provided as follows:

"Article 15. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed. * * *"

2. This "summary of the investigators' records" is used for want of any other evidence on the question of what the landowners asserted in their original claims. The summary was made by defendant's witness, Mr. Koons, on the day before trial and was allegedly taken from certain records of the Federal Works Agency. Its quotation here is for the purpose of showing the state of defendant's evidence rather than for its probative value in establishing the truth of the assertion made therein.

its work to the 50-foot right-of-way; and (2) violated the contract with defendant in that the backfill over the pipeline was left more than 6 inches high, thus causing the flooding of Mr. Morgan's land. The defendant asks us to hold that it was obligated to pay this $1,070 to Mr. Morgan and that this obligation arose because of a breach of duty by the plaintiff. The evidence before us is insufficient to warrant such a holding.

Assuming, *arguendo*, that the two items of alleged injury mentioned above resulted from a breach of contract by plaintiff, we have no basis for arriving at a *reasonable* estimate of what defendant was in fact obligated to pay the landowner in settlement. There is no direct evidence on the extent of the injury actually suffered by Mr. Morgan, although the situation is not one in which some proof of actual damages would have been difficult to adduce. The facts [3] as found by the head of the department upon appeal are merely that the contractor used an additional strip 30 feet by 1,191.2 rods and that the backfill was not leveled to a height of 6 inches. On the questions of what damage was done on the 30-foot strip; what crops, if any, were destroyed; the approximate amount and current value of such crops; the approximate area of the flooding and the crops destroyed thereby, the record is silent except for the alleged original assertions of the landowners to the defendant's field investigators as set out above from an exhibit of dubious evidentiary value and the stipulation as to the amount of money Morgan would have claimed had he testified. Manifestly we cannot find on such evidence that the settlement in this amount was reasonably required by defendant because of plaintiff's dereliction. It is, of course, impossible for us to segregate the items of damage in the absence of even a rough estimate of actual damages incurred by Mr. Morgan. Defendant has apparently made no attempt to show the basis of the allocation. This gives rise to a strong inference that the allocation was purely arbitrary and renders it impossible to segregate the amount defendant was obligated to pay on its own account and that alleged to have been caused by the plaintiff. For failure of such proof the deduction of $1,070 cannot be allowed. Standard Accident Insurance Company v. United States, 102 Ct.Cl. 770; certiorari denied, 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989; General Steel Corp. v. United States, supra; Kolker v. United States, D.C.Md., 40 F.Supp. 972.

The record of this case discloses an additional circumstance surrounding all of the settlements here involved which we deem worthy of comment in the interest of proper perspective. At the time defendant was pressing for settlement of the landowners' claim for alleged injury caused by plaintiff contractor, no settlement had been made with the same landowners for the easement acquired by defendant through the "Declarations of Taking." Defendant's attorney in charge of all negotiations and settlements with the landowners testified that his interest in settling all claims in a lump-sum payment was to avoid litigation on the easement, thus making the total cost to the Government as little as possible. The same sentiment is expressed in the "findings of fact" decision by the head of the department. While this was no doubt commendable prudence so far as the protection of the Government's interest is concerned, it is not an impressive argument in justification of the payment of a lump-sum settlement without even an estimate of the actual damages, particularly where such payment is being charged to a third party. Deduction from the contract price for damages due to breach of contract must be justified by some reasonable showing of what the actual damages were. General Steel Corp. v. United States, supra.

## II. The Ira D. Magee Settlement

■ It appears from defendant's evidence that Mr. Magee was the owner of

---

**3.** The reference is to the "findings of fact" by which we are bound and not the numerous conclusions of law found therein.

parcel 6, through which the pipeline was constructed. Mr. Koons, the F. W. A. counsel who negotiated these settlements, testified for defendant and apparently relied largely on the summary from the field investigator's records, which he made the day before the trial of this case, for the facts as to items originally claimed by Mr. Magee. They are as follows:

(a) 183.92 rods of easement, 50 feet wide ................. $183.92
(b) 16 mesquite trees destroyed.. 320.00
(c) Damage to fences, failure to restore to original condition.... 120.00
(d) Move concrete and fill sink hole ..................... 150.00
(e) Damage by reason of stock getting out (mule died)..... 80.00

Total ............... $853.92

In settlement of the above claims (apparently exclusive of the easement) [4] defendant paid Mr. Magee $289.08 and charged the entire amount to plaintiff. On appeal by plaintiff to the head of the department, that official found as fact that: (1) the contractor had broken up the concrete floor of Mr. Magee's stock pen, which was on the right-of-way, and dragged the debris off the right-of-way leaving it on the adjacent land; (2) plaintiff paid Mr. Magee $100 to restore the stock pen as he wanted it; (3) Mr. Magee charged that a ridge 12 inches high was left over the pipeline except in one place where the ground settled, leaving a breach 6 to 12 inches deep and 15 feet long; for the removal of the concrete and the sinkhole the landowner asked $150; (4) that Mr. Magee stated that although the contractor agreed to protect the mesquite trees forming a grove in his pasture (on the right-of-way) 16 were cut; [5] (5) that the trees were 15 to 20 years old and valued at

$20 each, or $320; (6) that the contractor failed to restore certain fences. The head of the department also made findings relative to the Government's obligation to pay and plaintiff's obligation to the Government under the contract, which are, of course, questions of law and not conclusive on us here. W. E. Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 616; Rust Engineering Co. v. United States, 86 Ct.Cl. 461, 473.

As pointed out above, the propriety of deducting the $289.08 paid to Magee in settlement from the contract price otherwise due plaintiff depends on whether plaintiff was responsible therefor because of the breach of some duty owed defendant. We do not think the deduction is justified by the evidence.

While there can be little doubt that the Government was liable for any damage normally occurring on the right-of-way caused by the construction, defendant contends that plaintiff is liable for the destruction of the 16 mesquite trees because in destroying them plaintiff breached the following provision of the contract specifications:

"Clearing and Grubbing

"Clearing and grubbing shall consist of *clearing the right-of-way of all trees*, brush, rubbish, and other objectionable materials and grubbing within the lines of excavation.

\*  \*  \*  \*  \*  \*

"*Where ornamental or other trees* on the right-of-way *are to be preserved*, the contractor shall protect the same from cuts and bruises.

"Ornamental trees and shrubs or sod on or along the right-of-way shall be carefully protected from damage, and the Contractor shall employ the services of a nurseryman, approved by the Engineer, to care

4. Except for the Morgan settlement, the record is not clear as to just what the settlements included. The only receipt in evidence re the Magee settlement is for $289.08, but there is some indication

that payment for the easement was made separately.

5. It will be noted that as to the last two items the department head merely found that Magee stated or charged and not that the statements were true.

for any such shrubs or trees which may be damaged or which fail to show satisfactory life and growth during six months after completion of construction under this contract." [Emphasis supplied.]

The defendant has not shown a breach of this provision by plaintiff. It is clear that the contractor was required to clear the right-of-way of "all trees" except "where ornamental or other trees *are to be preserved.*" It seems generally conceded that mesquite trees are not classed as ornamental in the area here involved, and plaintiff's supervisor's testimony that plaintiff was never advised that these trees "[were] to be preserved" is uncontradicted. The trees were cut with the approval of the architect-engineer whom defendant had employed to supervise the work on its behalf. We conclude that plaintiff could not properly be charged for the settlement of this item of damage between defendant and the landowner.

With respect to the remaining claims which Mr. Magee is alleged to have asserted to defendant's investigators, we have essentially the same problem as was presented by the Morgan settlement, supra. The head of the department merely found that Mr. Magee had made certain charges regarding the ridge and sinkhole, but made no findings on which a reasonable estimate of the damages could be made. Likewise, the evidence regarding the stock pen floor is inadequate. It is established that plaintiff paid Mr. Magee $100 for certain adjustments on this item. There is no evidence, however, on whether this was paid before or after the $150 claim was asserted to defendant's investigators. Also the question of segregation is again presented and for the reasons stated in the Morgan claim, supra, we hold that the $289.08 paid to Mr. Magee cannot be allowed as a deduction from the contract price due plaintiff.

III.  The Alva D. Strait Settlement

The claims originally asserted by Mr. Strait as reflected on the "summary" referred to above are as follows:

| | | |
|---|---|---:|
| (a) | 31.68 rods of 50-foot easement | $ 31.68 |
| (b) | Loss of garden, part on and part off the right-of-way... | 70.00 |
| (c) | Two days' time protecting fence | 15.00 |
| (d) | Repairs to fence | 15.00 |
| | Total | $131.68 |

This claim (again exclusive of the easement) was settled by defendant for $65 and the entire amount charged to the contractor. The department head's findings of fact are: (1) that one mesquite tree died as a result of having been run over and was not replaced; (2) that a three-quarters acre garden was destroyed; one-half of this garden was on the right-of-way and one-half off; the one-half which was off the right-of-way was valued at $35 and is chargeable to the contractor; (3) that Mr. Strait's fence crossed the right-of-way five times; he took two days off from work and saw to it that four of them were taken down and rolled; the fifth was cut and was difficult to replace during the war; (4) that replacement of the fences was not satisfactory; (5) that a ridge had been left, part of which Mr. Strait leveled off, part of which the contractor did.

It is apparent that while the Government, in effect, admits that it is liable for the one-half of the garden which was destroyed, the entire amount of the settlement was charged to plaintiff. As in the other claims dealt with, this is unexplained. The more serious question, however, is whether the Government was liable at all for any damage which the contractor might have done to the garden outside the right-of-way. If not, the contractor cannot be held accountable since the defendant was under no obligation to pay the money expended.

Defendant urges that its payment to Mr. Strait for damages outside the right-of-way is justified because such payments represent its damage for plaintiff's breach of the following provision of the contract:

738

"Right-of-Way

"The Government will provide right-of-way as shown on the plans. Any additional right-of-way or easement for transportation of materials and equipment or for storage of materials shall be provided and paid for by the Contractor.

"The Contractor shall make all arrangements for use of highway and street right-of-way for storage of materials or operation of equipment and other construction activities, and shall confine his work to the right-of-way and *shall be responsible for damages to structures, crops, etc., off the right-of-way*." [Emphasis supplied.]

While agreeing that plaintiff was an independent contractor who is normally solely responsible for his torts, defendant urges that the italicized portion of the above provision obligated plaintiff to *settle* for damages outside the right-of-way and, having failed to do so, defendant was entitled to effect such a settlement and charge plaintiff for the amount thus expended. We do not agree.

Plaintiff has at all times here relevant been solvent and amenable to suit; it offered to put up a bond for $3,000 as evidence of its ability to pay the landowners for any damage which was in fact inflicted; defendant refused this offer and Mr. Koons, the attorney in charge of the settlements for the Government, testified that the claims were never presented to plaintiff. We cannot say that an agreement "to be responsible" is tantamount to an agreement for extra-judicial settlement by arbitration. Plaintiff was admittedly an independent contractor and defendant has not shown that the situation was one justifying an exception to the established rule that it alone is responsible for damage inflicted on a third person. Since defendant was not liable for the damage outside the right-of-way, its unauthorized settlement on plaintiff's behalf was improper and the deduction is not allowable.

As to the other items of damages alleged, we are again faced with a situation in which the failure to segregate damages presents an insurmountable obstacle. For the reasons stated in the Morgan settlement, supra, the $65 settlement between defendant and Mr. Strait was improperly deducted from the contract price.

IV. The G. W. Hatch and the Weil Brothers Settlements

These two settlements present essentially the same questions and will therefore be disposed of together. The claims of these two landowners were for damages to their crops and land due to flooding, said to have resulted from an inordinately high mound of soil left over the pipeline which acted as a levee, preventing normal drainage of adjacent land. Their claims to the investigators are alleged to have been as follows:

(A) *G. W. Hatch Claim:*

(a) Lost crops in 1945 because of flooding caused by backfill over pipeline .............. $2,000

The defendant paid Mr. Hatch $425.23 in settlement of this claim, charging that amount to plaintiff. The department head found as a fact that the ridge across parcel 35, owned by Hatch, was at one time as high as 18 inches, and that flooding resulted. During the trial before a commissioner of this court, Mr. Hatch testified that he had no difficulty with flooding before the ridge was left by the construction, but that since that time he had lost approximately three acres of grain for each of the three years 1944, 1945, and 1946. He further testified that the area flooded normally produced 2,000 pounds per acre at a then current value of $2.14 per hundred. There was also evidence that the value of the land itself had been impaired by the retention of water on it for long periods of time with the result that it was, in the words of the witness, "slopped up." We think the record supports a finding that Mr. Hatch was damaged at least $425.28, and for the reasons set out below defendant was justified in effecting the settlement and charging it to plaintiff's account.

(B) *Weil Brothers Claim:*

Weil Brothers owned parcel 33 and in addition to the amount claimed for the easement, allegedly asserted the following claims:

(a) Crop damage by flooding caused by the ridge, 150 acres at $20 per acre for 2 years......... $6,000

(b) Construction of concrete boxes which extended to or above the ground level ........... 250

(c) Pasture damage from flooding, 150 acres at $500 per year... 1,000

Total ................ $7,250

The claim by Weil Brothers was settled by defendant for $474.60, of which $224.60 was charged to plaintiff for the flood damage. Defendant allocated to itself and paid $250 for the concrete boxes which were apparently constructed in conformity with the contract. The department head found as a fact that the ridge left on the Weil section of the pipeline was at least 12 inches in height and that flooding resulted. Mr. Weil testified that 150 acres of pasture and 150 acres of cultivated land were flooded because of the ridge in 1944 and 1945. This included 50 acres of cotton from which 350 pounds per acre could reasonably be expected, as well as some 40 acres of grain which couldn't be harvested because of water backed up by the ridge. We think there is ample evidence to support a finding that $224.60 was a reasonable settlement for the damage caused by the ridge. We turn now to our reasons for holding that defendant was justified in making these settlements (Hatch and Weil) and plaintiff's responsibility therefor.

The Administrator, Federal Works Agency, found that the ridge left over the pipeline on the Hatch and Weil properties was 12 and 18 inches in height, respectively. Under the disputes clause of the contract these findings are binding on this court. United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. This action by plaintiff was a violation of the contract provision on "Backfill" which provided:

"Excavation and Backfill
\*  \*  \*  \*  \*  \*

"3. *Backfill:*

"(a) *For Cast Iron and Concrete Pipe—* \* \* \*

"The backfilling shall be brought up uniformly on each side of the pipe and tamped in layers not exceeding six (6) inches in thickness after compaction, until the spring line has been reached.

"After backfilling has been brought up to the spring line, the layers may be increased to twelve (12) inches in thickness up to one foot above the pipe, above which the backfill material may be rounded up over the trench without tamping. Any excess material *over that which will reasonably fill the trench after settlement* may be spread and and rounded over the permanent right-of-way to a depth not exceeding 6 inches. Any remaining excess shall be removed by the Contractor and disposed of as approved by the Engineer. In spreading excavated material, drainage shall not be obstructed. Water tamping will not be permitted.

"The finished right-of-way shall be smooth." [Italics supplied.]

Plaintiff does not contest the finding that the ridge was more than six inches in height, but argues instead that the italicized portion of the above provision allows the backfill directly over the trench to be whatever height was required to "reasonably fill the trench after settlement." Assuming, without deciding, that this is a correct interpretation of the provision, it does not materially help plaintiff's case since there is considerable uncontradicted evidence to the effect that the ridge did cause flooding over a period of two years. Plaintiff had a definite duty not to obstruct drainage. Having found that plaintiff breached the contract by leaving the

ridge, the remaining question is whether the Government was rendered liable for the resulting damage to the adjacent landowners and was therefore justified in making the settlement.

Plaintiff's argument that defendant was not liable for damages done off the right-of-way by an independent contractor is not tenable when applied to the damage caused by interference with the normal drainage of the adjacent property. The rule of the civil law is in force in Texas according to which interference with the natural flow of drainage from another tenement by the owner of adjacent property renders the latter liable for any damage which results. Miller v. Letzerich, 121 Tex. 248, 85 A.L.R. 451, 49 S.W.2d 404; Coleman v. Wright, 121 Tex. 248, 155 S.W.2d 382, 85 A.L.R. 451. While the grant of an easement includes, by implication, the right to perform such acts as are reasonably necessary to make the grant effective, the holder of the easement cannot make alterations which will injuriously affect the servient tenement. 3 Tiffany on Real Property, § 810. It appears, therefore, that defendant as the holder of the easement might well have been subjected to suit by the adjacent landowners for the obstruction of natural drainage and the plea that the obstruction was raised by an independent contractor would have been unavailing. Under these circumstances the threat of liability was sufficient to warrant the settlement. The settlement was reasonable, not unrelated to the actual damage incurred by the landowners, and was necessitated by plaintiff's dereliction. Defendant was therefore justified in withholding $224.60 for the Weil settlement and $425.23 for the Hatch settlement from the contract price.

We conclude that defendant properly withheld $649.83 from the amount otherwise due plaintiff under the contract and that plaintiff is now entitled to recover the $2,350.17 improperly withheld.

There seems very little excuse for this case ever reaching the courts. Sometimes men "drest in a little brief authority" want to run not only their own businesses but that of someone else as well. Just why the officials decided they could contract that the plaintiff should be responsible for any damages outside the right-of-way and then feel that they were commissioned to settle with third-party claimants and in doing so use plaintiff's money without its consent is difficult to understand. This is especially true where the work was fully and satisfactorily performed.

In a maze of conflicting claims and lack of proof there is a temptation to make short shrift and simply say "Pay the plaintiff for his work." We think, however, after considering the vague and uncertain testimony and proof of damages, and assumed authority, we have reached a just conclusion, and in doing so have not strayed from the field of established law.

Plaintiff may have judgment for $2,350.17. It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.